# ATTACHMENT 3

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| DANIEL VILLEGAS, | § | |
| | § | |
| v. | § | **Cause No. EP-15-cv-00386-DCG** |
| | § | |
| CITY OF EL PASO, et al. | § | |

---

**DEFENDANT CITY OF EL PASO'S REPLY TO PLAINTIFF'S RESPONSE TO CITY'S PROPOSED UNDISPUTED FACTS**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant City of El Paso (City) and pursuant to A(5) & (7) of the Court's Standing Order Regarding Motions For Summary Judgement files this its Reply to Plaintiff's Response to the City's Proposed Undisputed Facts.  The Proposed Undisputed Fact listed by the City are shown in blue font, the Responses by the Plaintiff are shown in red, and the City's Reply is shown in black.

| PROPOSED UNDISPUTED FACTS | UNDISPUTED or DISPUTED | CONTROVERTING EVIDENCE (if disputed) |
|---|---|---|
| 14. Gibson's main complaint is that he believed that Detective Marquez perjured himself by testifying that he had never questioned Ms. Waits prior to taking her statement. **Exhibit D**—DEF CITY 0059469. | Disputed in part.  Gibson's allegations included arrest without probable cause and illegally obtained evidence. Undisputed that Gibson described Marquez's perjury in open court as his "main complaint." <br><br>**CITY'S REPLY:**  The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary by counsel. | Ex. 3 at CITY 59469 (listing additional allegations from Gibson) |

*City's Reply to Pltf'sResp to Proposed Undisputed Facts*                                    2

| | | |
|---|---|---|
| 15. Gibson had previously pursued an indictment against Detective Marquez in two grand juries, both of which no-billed Detective Marquez.<br>**Exhibit D**—DEF CITY 0059470. | Undisputed.<br>Add that Gibson explained that the prosecutor Steve Simmons had taken Marquez's side in the matter and had not made a fair presentation of the issue.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary by counsel. | Ex. 3 at CITY 59462 (providing additional context from Gibson) |
| 17. Gibson's allegation was fully investigated and failed to confirm that Detective Marquez acted improperly, and the allegation was determined to be not sustained.<br>**Exhibit D**—DEF CITY 0059412. | Disputed in part. The form language in a disposition letter that a complaint was "fully investigated" is not evidence of the extent of an investigation. Further, Gibson's allegation was not fully investigated and Det. Marquez was not questioned substantively by the EPPD about his inconsistent statements under oath. Internal Affairs failed to conduct a "fulsome interview of Marquez to inquire further as to conflicts between his testimony and that of Detective Flynn and to include why he omitted information regarding the totality of his contact with the defendant from his testimony."<br>Undisputed that the complaint was not sustained.<br><br>**CITY'S REPLY:** Plaintiff provides no factual controverting evidence, only opinion testimony from an expert that cannot form the basis of factual evidence. | Ex. 3 at CITY 59412 (form letter language insufficient to support asserted fact)<br>Ex. 4, Report of Dr. Richard Rosenthal, at 102 (deficiencies in investigation)<br><br>**CITY'S REPLY:** Expert opinion is not factual controverting evidence. This is merely an expert opinion and speculation. |
| 21. The trial court denied Vasquez's motion finding that he had been given his Miranda warnings twice and that there was no purposeful or flagrant police misconduct.<br>**Exhibit F**—DEF CITY 0082382- | Undisputed. Add that the Court also determined that Defendant Marquez had made an arrest.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply | Ex. 9, Vasquez Court Documents, City 82382-82385 (describing lack of probable cause and intervening circumstances) |

| | | |
|---|---|---|
| 82385. | additional improper commentary by counsel. | |
| 23. Plaintiff's *Monell* expert, Dr. Richard Rosenthal examined numerous internal affairs investigation files and testified that none of them were substantially similar to Plaintiff's allegations.<br>**Exhibit H**—Rosenthal Depo, 306:14-307:2. | Undisputed that he so testified. Object as incomplete.<br><br>**CITY'S REPLY:** Plaintiff does not attach controverting factual evidence. | Ex. 5, Deposition of Dr. Richard Rosenthal at 30:18-31:1 (scope of analysis).<br>Object as incomplete in that (1) defense counsel did not define "substantially similar" and (2) Dr. Rosenthal also testified that it was not part of his analysis to analyze the files for "substantial similarity." |
| 25. Chief Scagno was Chief of Police in 1993 when Robert England and Armando Lazo were murdered and when Plaintiff gave his confession.<br>**Exhibit I**—Scagno Depo. 49:9-20. | Disputed in part. Disputed that Plaintiff "gave" a confession in 1993—it was coerced from him. Undisputed that Scagno was then chief.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is merely semantics commentary by counsel. | E.g., Ex. 75, Villegas 12.1.94 testimony at 226:6–13, 226:23–227:7 (describing threats from Defendant Marquez to coerce confession) |
| 27. Chief Scagno was very serious about maintaining discipline and in one instance where Lieutenant Serna addressed a shift to speak about an auto theft problem, told the shift "we needed to kick their ass" and physically abused an auto theft suspect, he not only disciplined the Lieutenant by suspending him for six months and later passed over him for promotion to Captain at least twice because of this incident.<br>**Exhibit I**—Scagno Depo. 83:10-84:13<br>**Exhibit J**—Fluck Depo. 45:19-49:3. | Disputed in part.<br>Undisputed that some witnesses testified that Scagno was "serious" about maintaining discipline.<br>Disputed in that Scagno failed to take reasonable measures to address the widespread constitutional violations occurring in his Department, despite notice of systemic internal affairs deficiencies; that he failed to adequately supervise the Defendant Officers; and that he failed to implement corrective measures regarding juvenile policy violations despite notice of widespread and systemic violations. Further, Scagno punished the officers | Ex. 4, Rosenthal Report at 20, 27-28 (notice and failure to take reasonable measures);<br>Ex. 5, Rosenthal Dep at 170:7-171:12 (failure to reasonably discipline and investigate);<br>Ex. 6, Report of Joseph Allio, at 9, 38, 46-53 (failures to correct policy violations, including juvenile policy); Ex. 7, CP 89-194, at City<br><br>**CITY'S REPLY:** Expert opinion is not factual controverting evidence. |

| | | |
|---|---|---|
| | who reported Lt. Serna's misconduct by transferring them instead of Lt. Serna, ultimately negatively impacting the reporting officers' careers instead of Lt. Serna's career. Undisputed that Chief Scagno suspended Lt. Serna and passed him over for promotion at least twice. Disputed that the suspension was for six months – it was reduced to 88 days without explanation.<br><br>**CITY'S REPLY:** Plaintiff provides no factual controverting evidence, only opinion testimony from an expert that cannot form the basis of factual evidence. | |
| 28. Chief Scagno did not receive information about any prior incidents that were similar to Plaintiff's allegations. **Exhibit I**—Scagno Depo. 111:25-114:12. | Disputed.  Scagno testified that he could not remember receiving a complaint that multiple officers conspired to frame a suspect at all costs, or specific complaints regarding coercive investigations/ interrogations by Defendants Marquez, Arbogast, Ortega, or Graves (while acknowledging he didn't remember their names).  He then responded to a hypothetical – that if "there had been complaints filed with internal affairs about that kind of conduct," he "would have known about it." None of those statements establish that Chief Scagno did not receive information about similar incidents, and the questioning did not address juvenile policy violations, coercive interrogations or uses of force against juveniles, false arrests, or integrity violations as categories.  Chief Scagno | Ex. 8, Deposition of John Scagno At       111:25-114:12 (Scagno's testimony) Regarding notice to Scagno, see Plaintiff's PUF ¶¶ 78, 92, 98–104, 107–110, 153–161, 181, 189, 194. |

| | | |
|---|---|---|
| | received notice of similar incidents. **CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence, | |
| 29. Chief Scagno had no concerns that homicides were not being cleared correctly or that any corners were cut in clearing homicides. **Exhibit I**—Scagno Depo. 172:7-173:12. | Undisputed that he so testified. Disputed in that other record evidence shows that Chief Scagno had actual and constructive notice that homicide detectives were breaking policy to close murders. A reasonable jury could find that based on this notice, Scagno was concerned about homicides being cleared incorrectly. **CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | See Plaintiff's PUF ¶¶ 92, 107, 141–150 (actual and constructive notice to Scagno) |
| 30. In addition to learning of police misconduct incidents from Internal Affairs investigations, Chief Scagno would have received information about police misconduct from the District Attorney's Office and he did not receive any such information about prior incidents that were similar to Plaintiff's allegations. **Exhibit I**—Scagno Depo. 114:13-116:19 & 120:8-121:4. | Disputed. Scagno received information about numerous such incidents. **CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | See Plaintiff's PUF ¶¶ 78, 92, 98–104, 107–110, 153–161, 181, 189, 194 (notice to Scagno) |
| 31. Chief Scagno created an Inspections Division to monitor policy compliance in the | Disputed. Scagno testified only that he did not "recall" receiving reports of noncompliance with | Ex. 8, Scagno Dep. At 117:3–118:5 (Scagno's testimony about |

| | | |
|---|---|---|
| Department and he did not receive any information about prior incidents that were similar to Plaintiff's allegations. **Exhibit I**—Scagno Depo. 117:3-118:5. | felony investigative procedures and that, hypothetically, he would remember if there was an allegation of people deliberately conspir[ing] to do wrong. Scagno's testimony did not extend to excessive force and coercion while interrogating juveniles or dishonesty in the course of closing homicides.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | hypothetical scenario regarding hypothetical conspiracy by group of officers)<br><br>**CITY'S REPLY:** Plaintiff provides no evidence to dispute the City's claim |
| 32. If Chief Scagno had learned of any such allegations, he would have been outraged and he would have started a criminal investigation followed by an internal affairs investigation. **Exhibit I**—Scagno Depo. 117:3-118:5. | Disputed. The transcript is clear that "such allegations" refers only to deliberate conspiracies to "do this wrong," i.e., frame someone for murder. Scagno's testimony did not extend to excessive force and coercion while interrogating juveniles or dishonesty in the course of closing homicides.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | Ex. 8, Scagno Dep. at 117:24–118:22, 121:5–122:9 (Scagno's testimony about deliberate conspiracies among officers)<br><br>**CITY'S REPLY:** Plaintiff fails to point to any factual controverting evidence |
| 33. If Chief Scagno found that misconduct like that alleged by Plaintiff had occurred, it would have resulted in a termination of employment. **Exhibit I**—Scagno Depo. 121:5-16 & 177:12-24. | Disputed.<br>The transcript is clear that "such allegations" refers only to deliberate conspiracies to "do this wrong," i.e., frame someone for murder. Scagno's testimony did not extend to excessive force and coercion while interrogating juveniles or dishonesty in the course of closing homicides. | Ex. 8, Scagno Dep. at 117:24–118:22, 121:5–122:9, 177:12–24 (Scagno's testimony about officer conspiracies to frame someone for murder)<br><br>**CITY'S REPLY:** Plaintiff fails to point to |

| | | |
|---|---|---|
| | Plaintiff's entire case is based on the allegation that the Defendant Officer framed Plaintiff for murder. The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | any factual controverting evidence |
| 34. Chief Scagno is confident that the Crimes Against Persons unit was following Departmental policies and procedures and was conducting its activities properly at the time of Plaintiff's arrest. **Exhibit I**—Scagno Depo. 131:8-132:12. | Disputed.  Scagno's testimony was that CAP "was very well run, well commanded" and that he "had no indication that there was a problem with CAP." The cited testimony does not address compliance with policies or procedures.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | Ex. 8 ,Scagno Dep at 131:8–132:12 (Scagno's generalized praise of CAP)<br><br>**CITY'S REPLY:** Plaintiff fails to point to any factual controverting evidence |
| 35. Chief Scagno took disciplinary action against officers in every case where misconduct was proven. **Exhibit I**—Scagno Depo. 186:3-12. | Disputed. Plaintiff has identified many cases where misconduct and policy violations were plain from the face of the investigation, but the Department did not take disciplinary action.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | See Plaintiff's PUF ¶¶ 30–63, 153–161 (investigations where Scagno failed to discipline misconduct and policy violations that were plain from the face of the complaint)<br><br>**CITY'S REPLY:** Plaintiff fails to show where there is a judicial or administrative finding of misconduct.  Plaintiff's experts' opinion of what might be plain from the face of the complaint do not make a proven case of misconduct. |

| | | |
|---|---|---|
| 37. Chief Messer then took a position as a Deputy Chief where he made disciplinary decisions for the Department until August of 1986.<br>**Exhibit K**—Messer Depo. 10:8-16:12. | Disputed in part.<br>Messer described his role as "Assistant Chief." Undisputed that Messer made disciplinary decisions for the Department.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | Ex. 10, Messer Dep. 17:6–10 (describing position and decisions) |
| 39. Chief Messer then returned to his Deputy Chief position and resumed his duties overseeing Internal Affairs and was in that position in 1993-94 (at the time of Plaintiff's arrest).<br>**Exhibit K**—Messer Depo. 17:6-19:5. | Disputed in part.<br>Messer described his role as Assistant Chief. Add further that Messer made disciplinary decisions for the Department during Scagno's tenure as Chief.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | Ex. 10 at 14:18–15:3, 17:6–10, 17:11–19 (Messer was Scagno's surrogate and he continued with largely the same disciplinary processes); DSUF ¶ 37 (Messer made disciplinary decisions through August 1986). |
| 40. Chief Messer was not aware of any prior pattern of police misconduct that was similar to Plaintiff's allegations.<br>**Exhibit K**—Messer Depo. 170:15-176: & 220:23-224:17. | Disputed. Messer received notice of similar misconduct. Messer testified that he had received some complaints about coerced confessions or witness statements and additional notice from criminal proceedings.<br>The cited testimony does not support the fact as stated by Defendant. The question "did you have [in 1993 and 1994] any factual information that would have caused you to believe there was an ongoing pattern of illegal investigative conduct in the crimes against persons unit" is vague and not specific to the allegations in Plaintiff's suit or his Monell theories.  Messer | Ex. 10, Messer Dep. at 171:8–15, 173:9–14, 174:7–11; 174:23–175:6 (Messer's vague testimony regarding foundation for belief in pattern)<br>See Plaintiff's PUF ¶¶ 78, 92, 98–104, 107–110, 153–161, 181, 189, 194 (notice to Messer of patterns of misconduct) |

| | | |
|---|---|---|
| | states that he had not seen a "pattern" of misconduct by "these" CAP detectives prior to 1993, but does not state that he had not seen misconduct by them. Messer states that he does not remember any internal affairs cases before 1993 with allegations of prison rape and the death penalty, but clarifies, "which is not to say that there might not have been some." | |
| | **CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel attempting to expand the fact beyond what the Defendant has cited it for, from misconduct similar to Plaintiff's allegations to misconduct. Plaintiff provides no factual controverting evidence regarding the actual pled fact. | |
| 43. During his entire career with the El Paso Police Department, Chief Fluck did not have any credible knowledge or information that any of the allegations in Plaintiff's lawsuit were true.<br>**Exhibit J**—Fluck Depo. 32:11-13; 38:6-39:1; 41:20-42:10; and 44:3-7<br>**Exhibit L**—Fluck Affidavit, DEF CITY 0080753- 80755. | Disputed. Fluck's testimony states only that he did not have "credible knowledge or information" that those allegations were true during his time as Chief, and his testimony is inappropriately vague as to the "allegations" in reference; likewise, his testimony about physical abuse to obtain statements or confessions addresses only ongoing conduct in Crimes Against Persons; general vagueness as to the "type of conduct alleged in the complaint." Fluck's testimony that he had no "information" of any coercion being used to obtain statements or confessions is | Ex. 13, Fluck Deposition at 32:11-13; 38:6-39:1; 41:20-42:10; and 44:3-7. (Fluck's vague testimony about types of conduct alleged)<br>See Plaintiff's PUF ¶¶ 30–63, 153–161 (evidence of internal affairs complaints contradicting Fluck's testimony regarding lack of information)<br><br>**CITY'S REPLY:**<br>Unfounded allegations and cases where there are judicial findings to the contrary do not equate to credible knowledge or |

| | | |
|---|---|---|
| | flatly contradicted by the internal affairs files at issue in this case. The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel attempting to expand the fact beyond what the Defendant has cited it for, from misconduct similar to Plaintiff's allegations to misconduct. Plaintiff provides no factual controverting evidence regarding the actual pled fact. | information. Plaintiff fails to show where there is a judicial or administrative finding of misconduct.  Plaintiff's experts' opinion of what might be plain from the face of the complaint do not make a proven case of misconduct |
| 44. The District Attorney's office would not hesitate to prosecute an El Paso Police Officer for illegal conduct and would have informed the Police Department if it learned of any such misconduct. **Exhibit J**—Fluck Depo. 39:12-40:23 & 42:11-43:14. | Disputed.  Fluck's testimony lacks foundation and does not provide a basis for the asserted fact.  Object as irrelevant.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | Ex. 13, Fluck Dep at 39:12–40:23, 42:11–43:14 (Fluck's unsupported opinion testimony) Objection: Fluck's opinion on what the District Attorney's "would do" in a hypothetical situation is not competent evidence.<br><br>**CITY'S REPLY:** Plaintiff fails to point to any factual controverting evidence |
| 45. Chief Scagno, Chief Messer, and Chief Fluck were committed to compliance with the juvenile processing rules and laws. **Exhibit J**—Fluck Depo. 72:11-73:19. | Disputed in part.  Fluck has no foundation or basis to opine on Chief Scagno and Chief Messer's states of mind and none is suggested in Defendant's citation. Fluck did not present or identify any specific incident where Scagno or Messer took actions to enforce juvenile policies. Undisputed that Fluck testified that he himself was committed to following juvenile procedures.  Object to relevance.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by | Ex. 13, Fluck Dep at 72:11–73:19 (Fluck's unsupported opinion testimony and testimony about his own commitments) Object that Fluck's statement about his "commitments"<br><br>**CITY'S REPLY:** Plaintiff fails to point to any factual controverting evidence |

| | | |
|---|---|---|
| | Plaintiff. The rest is simply additional improper commentary/opinion by counsel attempting to expand the fact beyond what the Defendant has cited it for. | |
| 46. Chief Scagno, Chief Messer, and Chief Fluck were not willing to allow officers to break the rules in order to achieve some just result.<br>**Exhibit J**—Fluck Depo. 74:4-14. | Disputed in part.  Fluck has no foundation or basis to opine on Chief Scagno and Chief Messer's states of mind and none is suggested in Defendant's citation. Fluck did not present or identify any specific incident where Scagno or Messer demonstrated this supposed attitude.  Undisputed that Fluck testified to his disposition as stated.  Object to relevance.<br><br>**CITY'S REPLY:**  The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | Ex. 13, Fluck Dep at 74:4-14 (Fluck's unsupported opinion testimony and testimony about his own commitments)<br>Object that Fluck's statement about what he was "willing" to do is not relevant.<br><br>**CITY'S REPLY:** Plaintiff fails to point to any factual controverting evidence |
| 49. CAP officers worked closely with the District Attorney's office so that all evidence, including exculpatory evidence, was provided to Defense Counsel.<br>**Exhibit N**—Ocegueda Depo. 35:6-36:17<br>**Exhibit O**—Larose Affidavit, DEF CITY 0081516-81518<br>**Exhibit P**—Havlovic Affidavit, DEF CITY 0080756-80758<br>**Exhibit V**—Stiles Affidavit, DEF CITY 0082424-82426] | Disputed.  Pete Oceguda's deposition was taken in violation of the discovery rules. It was taken outside of fact discovery without party agreement or court permission. It is not competent evidence.  Further, the record contains evidence of exculpatory evidence that was not provided to prosecutors or defense counsel.  Object as vague and conclusory.<br><br>**CITY'S REPLY:**  Plaintiff's procedural objections are contrary to this Court's Order which permitted Osegueda's deposition [Dkt.304]. Moreover this procedural objection to discovery does not contradict the | Ex. 16, Correspondence objecting to Ocegueda's deposition being taken outside fact discovery without leave from parties or the Court<br>See Ex. 75, Villegas 12.1.94 testimony, at 248:1–249:23 (Defendant Marquez discarded exculpatory partial statement from Plaintiff)<br>Object that the affidavits are conclusory and are not competent evidence to establish the course of discovery in all criminal investigations where CAP officers worked |

| | pled fact or provide any controverting factual evidence. | with the District Attorney's Office.<br><br>**CITY'S REPLY:** Plaintiff's procedural objections to discovery do not contradict the fact or provide any controverting factual evidence. |
|---|---|---|
| 50. CAP officers regularly testified at defense motions to quash.<br>**Exhibit N**—Ocegueda Depo. 37:10-38:16. | Disputed. Pete Oceguda's deposition was taken in violation of the discovery rules. It was taken outside of fact discovery without party agreement or court permission. It is not competent evidence.<br><br>**CITY'S REPLY:** Plaintiff's procedural objections are contrary to this Court's Order which permitted Ocegueda's deposition. [Dkt.304]. Moreover this procedural objection to discovery does not contradict the pled fact or provide any controverting factual evidence. | Ex. 16, Correspondence objecting to Ocegueda's deposition being taken outside fact discovery without leave from parties or the Court.<br><br>**CITY'S REPLY:** Plaintiff's procedural objections to discovery does not contradict the pled fact or provide any controverting factual evidence. |
| 51. If evidence was suppressed, CAP supervisors would know about it and would take corrective action.<br>**Exhibit N**—Ocegueda Depo. 38:19-39:9 & 39:22-40:4. | Disputed. Pete Oceguda's deposition was taken in violation of the discovery rules. It was taken outside of fact discovery without party agreement or court permission. It is not competent evidence. Oceguda also lacks foundation and expertise to testify to the practice of CAP. Objection to form.<br><br>**CITY'S REPLY:** Plaintiff's procedural objections are contrary to this Court's Order which permitted Ocegueda's deposition. [Dkt.304]. Moreover, this procedural objection to | Ex. 16, Correspondence objecting to Ocegueda's deposition being taken outside fact discovery without leave from parties or the Court. Object that this fact is argumentative and in the form of a hypothetical.<br><br>**CITY'S REPLY:** Plaintiff's procedural objections are contrary to this Court's Order. [Dkt.304] Plaintiff's objection to discovery does not contradict the pled fact or provide any |

| | discovery does not contradict the pled fact or provide any controverting factual evidence. | controverting factual evidence. |
|---|---|---|
| 52. At the time of Plaintiff's arrest, CAP supervisors had no notice of coercion or abuse similar to Plaintiff's allegations. **Exhibit N**—Ocegueda Depo. 39:10-21 & 46:18-47:19 **Exhibit Q**—Ocegueda Affidavit, DEF CITY 0081519-81521. | Disputed. Pete Oceguda's deposition was taken in violation of the discovery rules. It was taken outside of fact discovery without party agreement or court permission. It is not competent evidence. Oceguda's affidavit contains no statement as to what supervisors at CAP knew. He lacks foundation as to the knowledge of other supervisors. **CITY'S REPLY:** Plaintiff's procedural objections are contrary to this Court's Order which permitted Ocegueda's deposition. [Dkt.304]. Moreover, this procedural objection to discovery does not contradict the pled fact or provide any controverting factual evidence. | Ex. 16, Correspondence objecting to Oceguda's deposition being taken outside fact discovery without leave from parties or the Court Ex. 17, Oceguda Affidavit (containing no statement about what CAP supervisors knew) **CITY'S REPLY:** Plaintiff's procedural objections are contrary to this Court's Order. [Dkt.304] Plaintiff's objection to discovery does not contradict the pled fact or provide any controverting factual evidence. |
| 53. Prosecutors in the El Paso District Attorney's Office had a duty to report misconduct of El Paso Police Officers and did not see or report the kinds of police misconduct alleged by Plaintiff. **Exhibit O**—Larose Affidavit, DEF CITY 0081516-81518 **Exhibit P**—Havlovic Affidavit, DEF CITY 0080756-80758 **Exhibit V**—Stiles Affidavit, DEF CITY 0082424-82426. | Disputed. The affidavits are vague as to "evidence or allegations substantially similar to those alleged facts," and the affidavits state no basis for the supposed responsibility to report police misconduct. Further, Stiles's only participation as a prosecutor was from 1980 to 1982. **CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | Ex. 18, Larose Affidavit ¶¶ 7-8 (vague assertions RE "substantially similar" information) Ex. 19, Havlovic Affidavit, ¶¶ 7–8 (vague assertions RE "substantially similar" information) Ex. 20, Stiles Affidavit, ¶¶ 7, 10 (vague assertions RE "substantially similar" information) **CITY'S REPLY:** Plaintiff fails to point to any factual controverting evidence |

| | | |
|---|---|---|
| 54. Plaintiff's *Monell* expert, Dr. Richard Rosenthal, did not even attempt to determine whether there was a sufficiently similar prior pattern of incidence that would make the City liable as a result of failure to take disciplinary or remedial action. **Exhibit H**—Rosenthal Depo. 30:18-31:1. | Disputed in part. Undisputed that Dr. Rosenthal did not attempt to decide the legal question of the City's liability. Disputed to the extent that Defendant implies that Dr. Rosenthal did not analyze the existence of patterns, as his report found that there were patterns of misconduct of which the Chief of Police was or should have been aware.<br><br>**CITY'S REPLY:** Plaintiff does not attach controverting factual evidence, only commentary on additional non-controverting opinions of Dr. Rosenthal. | Ex. 4, Rosenthal Report at 8, 18, 27–29 (relevant opinions by Rosenthal and statements on the scope of his analysis) Ex. 21, Rosenthal Rebuttal at 14 (noting that Department command staff ignored patterns of misconduct and edited a disciplinary disposition letter to hide evidence of that pattern).<br><br>**CITY'S REPLY:** Plaintiff does not attach controverting factual evidence, only commentary on additional non-controverting opinions of Dr. Rosenthal. |
| 55. At the time of Plaintiff's arrest all El Paso officers were taught, even as rookies, the lawful investigative techniques to obtain statements and confession and the Department relied heavily on lawyers and in particular Assistant District Attorneys to provide this training. **Exhibit I**—Scagno Depo. 122:10-123:18 **Exhibit R**—Earl Arbogast Depo. 16:21-17:21. | Disputed. Chief Scagno's testimony had no foundation as to timeframe and mentioned only a course that was taught when Scagno was a lieutenant at the academy – i.e., sometime before February 1987, when he became Chief of Police. Defendant Arbogast's testimony is that he was trained on Miranda procedures, but states nothing further about lawful investigation techniques.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | Ex. 4, Scagno Dep. at 49:16–20; 122:10–123:18 (Scagno's testimony as to training courses previously offered at the training academy). Ex. 22, Arbogast Dep at 16:21–17:21 (testimony regarding Miranda procedures).<br><br>**CITY'S REPLY:** Plaintiff does not provide any controverting factual evidence |

| | | |
|---|---|---|
| 56. Officers assigned to Crimes Against Persons received additional training relating to their jobs.<br>**Exhibit K**—Messer Depo. 65:23-66:25 & 79:3-11<br>**Exhibit N**—Ocegueda Depo. 12 :8-13 :25<br>**Exhibit R**—Earl Arbogast Depo. 25:2-6, 31:19-33:6 & 50:25-51:24<br>**Exhibit S**—Graves Depo. 21:6-20, 41:9-42:2<br>**Exhibit T**—Sanchez Depo. 60:19-63 :21<br>**Exhibit U**—Marquez Depo. 28:7-29 :1 & 38 :1-18. | Undisputed that, broadly, CAP officers received some "additional training" relating to their jobs.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | |
| 57. El Paso police training programs were state of the art under TCOLE standards and criteria for training officers on the constitutional and statutory requirements applicable to investigations.<br>**Exhibit L**—Fluck Affidavit DEF CITY 0080754. | Disputed. Fluck has no foundation for his statement that the programs were "state of the art." His affidavit is vague regarding the nature, frequency, and content of the training. Further, the only training that the City's 30(b)(6) representative testified to as provided to CAP detectives in 1993 were state-mandated use-of-force and firearms trainings, sexual harassment and city policy training, and external trainings which were chosen on an ad hoc basis.<br><br>**CITY'S REPLY:** The fact as asserted is undisputed by Plaintiff. The rest is simply additional improper commentary/opinion by counsel. Plaintiff provides no factual controverting evidence. | Ex. 14, Fluck Aff., ¶ 6 (vague statements without foundation on quality of training) Ex. 2, Moton Dep at 46:23–47:14; 47:25–49:13 (describing trainings offered to CAP detectives in 1993)<br><br>**CITY'S REPLY:** Plaintiff provides no factual controverting evidence. |