IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS, EL PASO DIVISION

| | |
|---|---|
| DANIEL VILLEGAS, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:15-CV-386 |
| ) | |
| v. ) | Hon. David C. Guaderrama |
| ) | |
| CITY OF EL PASO et al., ) | Hon. Leon Schydlower |
| ) | |
| Defendants. ) | |

**PLAINTIFF DANIEL VILLEGAS'S SURREPLY TO
DEFENDANT CITY OF EL PASO'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT [DKT. 348, 386]**

Unable to rebut Plaintiff on the merits, the City instead accuses Plaintiff of committing a "switcheroo" by failing to plead his failure to train, failure to discipline, and failure to supervise *Monell* claims. But these claims are directly pleaded in Plaintiff's operative complaint, and Plaintiff has given consistent notice of the theories and evidence on which he planned to proceed. The City has no ground to claim surprise, let alone the kind of unfair prejudice that would justify dismissal of Plaintiff's *Monell* claims. And if the Court concludes that repleading is necessary, the Court should grant Plaintiff leave to amend his complaint to avoid a miscarriage of justice.

**I.     The City Had Notice of Plaintiff's *Monell* Claims**

Throughout the litigation—from the Complaint, to *Monell* discovery, to expert reports and depositions—Plaintiff has identified the *Monell* theories and evidence on which he planned to proceed. The City has no grounds to protest lack of notice. The City also takes the novel position that Plaintiff was required to replead

his Complaint to name every piece of evidence he would rely on at summary judgment. But the City's attempt to import a fact pleading standard into federal law has no basis and should be rejected.

All a complaint must contain is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To adequately plead a claim, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There is no "fact pleading" standard in federal court; instead, "[i]ssues [are] to be defined by discovery, not pleading." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

As articulated at summary judgment, Plaintiff's *Monell* theories are: (1) the City failed to train its officers to exercise care and caution with juveniles, *i.e.*, to understand juvenile vulnerability and respect juveniles' rights; (2) the City failed to investigate and discipline officers for threatening and physically harming juvenile suspects and violating juvenile policies; and (3) the City encouraged officers to clear cases at all costs and tolerating dishonesty while deliberately failing to supervise officers. (Dkt. 367 at 4–5.) Although Plaintiff has distilled his *Monell* claim into three theories, all three were properly pleaded in Plaintiff's Third Amended Complaint. The Complaint identifies one theory as the City's failure to train officers on the need to "exercise care and caution" when engaging with juveniles. (Dkt. 153 ¶ 178.) It explains that the Defendant Officers violated juvenile policies in their

efforts to wrongfully convict Plaintiff. (*Id.* ¶¶ 48 (Defendant Graves "violated Texas law governing the treatment of juvenile arrestees), 59 (Defendants "again failed to follow" that law when arresting Plaintiff), 77 (Defendants did not follow juvenile law when interrogating Plaintiff). It explains that Plaintiff and his friends were targeted and vulnerable because of their youth (*Id.* ¶¶ 45, 71), but the City nevertheless failed to discipline officers for such conduct or train them to avoid such misconduct, and those failures caused Plaintiff's wrongful conviction (*Id.* ¶¶ 176, 181–83). Likewise, the Complaint states that the Defendants were able to commit deceit, perjury, and other cover-ups without meaningful supervision and were encouraged to do so in pursuit of "closing cases no matter what the costs." (*Id.* ¶¶ 182–83.)

Defendants received further notice from the parties' negotiated *Monell* discovery. In support of his *Monell* claims, Plaintiff requested policies, procedures, and disciplinary files regarding questioning and interrogations of juvenile witnesses, and the City agreed to provide those documents. Ex. 1, June 7, 2022 City's supplemental response to Pl.'s Second RFP's at ¶¶ 3(c), 4–7. The City agreed to produce, and did produce, all Internal Affairs files involving allegations regarding juveniles. *Id.* at ¶ 7 (City's Supplemental Response listing categories of IA files to be produced).

Experts from both parties provided expert testimony on the theories at issue. Plaintiff's experts Dr. Richard Rosenthal and Joseph Allio addressed failures of juvenile training, failures to discipline misconduct against juveniles, and

insufficient supervision of integrity issues while encouraging convictions at all costs. Ex. 2, Rosenthal Report at 2–3, 18–20 (juvenile issues) ; 2, 5–18, 20–24 (integrity issues and convictions-at-all-costs); 24–29 (both); Ex 3, Rosenthal Rebuttal at 1–3 (integrity issues), 4–9 (juvenile and integrity issues), 10–15 (integrity issues); Ex. 4, Allio Report at, *e.g.*, 7–8, 17, 21, 43, 46–53 (juvenile issues); 9, 41, 53 (integrity issues and convictions-at-all-costs). Defendants deposed Dr. Rosenthal for more than seven hours of questioning and have had ample opportunity to explore these opinions.

Perhaps the best evidence that the City knew of Plaintiff's theories is that the City instructed its expert to address them specifically. Its *Monell* expert Jeffrey Noble wrote, "[t]here is no evidence of a pervasive, widespread issue in the El Paso police department of officers failing to follow juvenile policies to the extent that an officer would believe they could violate the constitutional rights of a juvenile with impunity . . . ." Ex. 5, Noble Report ¶ 53. Mr. Noble likewise addressed Plaintiff's integrity allegations, writing: "I disagree with Mr. Rosenthal's opinion that the El Paso Police Department had a practice of failing to investigate allegations of untruthfulness and that those deficiencies would lead to wrongful convictions." *Id.* ¶ 51.

There was no surprise attack here. The parties developed *Monell* evidence in discovery based on theories known to the City and addressed by both parties' experts. Every piece of evidence relied upon by Plaintiff in response to the City's Rule 56 motion was disclosed in discovery. Further, Plaintiff alleged that the City

4

was aware of additional incidents of similar misconduct and constitutional violations; he could not have named the IA files when he so pleaded, because they had not been produced. (Dkt. 153 ¶ 176.)

There is no requirement, and the City identifies none, for a plaintiff to amend his complaint after *Monell* discovery has been completed to list additional evidence that has been found consistent with the plaintiff's pleadings. Nor was Plaintiff required to plead "legal theories" in his complaint, and the City invites error by proposing otherwise. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11–12 (2014) (holding that pleadings need not specify legal theories); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1219, p. 277–78 (3d ed. 2004) ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief."). Because Plaintiff's complaint put the City on notice of his theories and the specific kinds of evidence he would rely on, he can rely on additional evidence of that kind. Defendants' citations are not to the contrary. *E.g.*, *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 925 (5th Cir. 2022) (plaintiff could not raise claim under new federal statute for first time at summary judgment); *Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021) (rejecting *Monell* theory regarding failure to train officers to deal with "mentally unstable individuals" where complaint made no mention of that issue); *Sims v. City of Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018) (broad claim that defendant conspired to violate "constitutionally protected interests" did not give notice of claim for false and fabricated evidence); *Marzett v. Tigner*, No. 20-

5

30154, 2022 WL 1551895, at *2 (5th Cir. May 17, 2022) (plaintiff could not proceed on theory of warden's personal involvement where he had not pleaded such involvement).

This leaves only the City's argument that Plaintiff was obligated to amend his complaint to name each disciplinary file or piece of evidence he would use to prove his theories. That is not the rule. At summary judgment, "[t]he formal issues framed by the pleadings are not determinative . . . and evidentiary matter may be developed, showing that the party moved against has presented genuine issues of material fact." *Eastland v. Tenn. Valley Auth.*, 553 F.2d 364, 370 (5th Cir. 1977); *see also Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 627 (N.D. Tex. 2010) (concluding that "evidentiary material that further develops the allegations" in a complaint is properly considered at summary judgment). The City had exclusive possession of its disciplinary files before discovery began, so Plaintiff could not have pleaded the disciplinary files he would rely on even if he had wanted to. In any case, all of the Internal Affairs files presented in Plaintiff's response brief were identified and addressed in Dr. Rosenthal's expert report. (Dkt. 367 at 10–11, 15–18, 20–21, 27). Plaintiff also relied on incidents described in his initial complaint. (Dkt. 367-1 ¶¶ 52–54, 60–63). These documents were produced in discovery via requests for production and subpoenas, and the City does not claim otherwise.

The City claims that it relied on its requests for production to identify the documents Plaintiff relied on. But although the City propounded requests for production for documents regarding several paragraphs in Plaintiff's Complaint, it

never asked about paragraph 178, which specifically identified the City's failure to train officers on the need to "exercise care and caution" when engaging with juveniles. Ex. 6, Pl.'s Resp. to the City's First RFP's; *see* Dkt. 153 ¶ 178. Moreover, as Plaintiff stated in his response, he (properly) understood the City not to be requesting documents already in the City's possession and control. *Id.* at 1–2. Plaintiff also indicated throughout his response that the City would need to propound timely interrogatories to "identify some specific sub-set of the discovery record in the case as supporting one of Plaintiff's legal or factual contentions." *E.g.*, *id.* ¶ 10. The City could have conferred, propounded timely interrogatories, or raised the issue with the Court if it wanted more specification of the evidence Plaintiff would rely on, but the City declined to do so. Defendant cannot accuse Plaintiff of engaging in subterfuge when Plaintiff produced his evidence in discovery, had his expert explicitly identify all of it, and the City never questioned whether it understood Plaintiff's *Monell* theories.

In the alternative, if the Court holds that Plaintiff's Complaint should have been amended to incorporate the internal affairs files that were the subject of discovery (and of which the City has long had notice), Plaintiff prays that the Court grant leave to amend his complaint in the interests of justice consistent with Rule 15(a)(2). As shown by the City's 28 pages of briefing on the issue, the City has had opportunity to adequately address the evidence adduced by Plaintiff and would not be prejudiced by such a motion. (Dkt. 386 at 6–23.)

## II. Issues Regarding Facts

Two issues remain regarding facts. First, the City propounded an additional 121 proposed undisputed facts alongside his reply. (Dkt. 386-1.) The Court's rules prohibit such a filing. Plaintiff disputes the additional proposed undisputed facts and asks the Court to either disregard them or to give Plaintiff an opportunity to respond.

Second, Plaintiff acknowledges that his brief contained a typo referring to "IA 92-009," as the City notes. (Dkt. 386 ¶ 39.) As suggested by the preceding paragraphs, it should instead read "IA 92-174." (Dkt. 367 at 13.) Plaintiff apologizes for the error.

## Conclusion

Plaintiff asks the Court to deny the City's motion for summary judgment, to disregard the City's improperly raised proposed undisputed facts, and to take notice of the correction of the typo mentioned above.

RESPECTFULLY SUBMITTED,

DANIEL VILLEGAS

By: /s/ *Wallace Hilke*
     One of His Attorneys

Jon Loevy, Illinois Bar No. 6218254
(admitted *pro hac vice*)
jon@loevy.com
Russell Ainsworth, Illinois Bar No. 6280777
russell@loevy.com
Sam Heppell, Illinois Bar No. 6320776
sam@loevy.com
Quinn Rallins, Illinois Bar No. 6339556
(admitted *pro hac vice*)
rallins@loevy.com

>Wallace Hilke, Illinois Bar No. 6329814
>(admitted *pro hac vice*)
>hilke@loevy.com
>LOEVY & LOEVY
>311 N. Aberdeen St., 3rd Fl.
>Chicago, IL 60607
>T: 312-243-5900
>F: 312-243-5902
>
>Felix Valenzuela
>State Bar No. 24076745
>VALENZUELA LAW FIRM
>221 N. Kansas Street, Ste. 1200
>El Paso, TX 79901
>T: 915-209-2719
>F: 915-493-2404
>felix@valenzuela-law.com

## CERTIFICATE OF SERVICE

I, Wallace Hilke, an attorney, hereby certify that on June 2, 2023, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

>*/s/ Wallace Hilke*
>One of Plaintiff's Attorneys

9