UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **DANIEL VILLEGAS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | |
| **CITY OF EL PASO;** | § | |
| **YVONNE WHITAKER,** | § | |
| *In her capacity as the Executor of Decedent* | § | |
| *Alfonso Marquez's Estate*; | § | |
| **CARLOS ORTEGA;** | § | **EP-15-CV-00386-DCG** |
| **SCOTT GRAVES;** | § | |
| **EARL ARBOGAST;** | § | |
| **RAY SANCHEZ;** | § | |
| **HECTOR LOYA; and** | § | |
| **UNKNOWN EMPLOYEES OF THE** | § | |
| **CITY OF EL PASO,** | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant City of El Paso's Motion for Summary Judgment. Def. Mot. Summ. J., ECF No. 348. The Motion is **PARTIALLY GRANTED AND PARTIALLY DENIED**. The Court has separately issued an opinion ruling on the Defendant Officers' Motions for Summary Judgment.

## I. Introduction[1]

This case concerns Plaintiff Daniel Villegas's claim that Defendant's policies and practices contributed to the deprivation of his constitutional rights. *See* Pl.'s Resp., ECF No. 367. The Court extensively detailed the factual background in its companion Opinion, which responds to

---

[1] All page citations in this Order refer to the page numbers assigned by the Judiciary's CM/ECF system, rather than the cited document's internal pagination.

the individual officers' motions for summary judgment.  The Court incorporates by reference its recitation of the facts set forth in its companion Opinion.

However, to briefly summarize the facts, Plaintiff was convicted of murdering Armando Lazo and Robert England.  He spent nearly twenty years in prison before his conviction was vacated in 2013.  After Plaintiff's conviction was vacated, he was put on trial for a third time, where he was found not guilty.  Plaintiff now brings suit against Defendant and individual officers who were employed by Defendant.  He asserts claims against the officers for fabricating evidence, suppressing evidence, coercing an involuntary confession, malicious prosecution, false arrest, failure to intervene, and conspiracy.[2]  As detailed in the companion Opinion, Plaintiff presents sufficient evidence to defeat summary judgement against at least one officer on each of his claims for fabricating evidence, suppressing evidence, and for obtaining or using a coerced confession.

Plaintiff also seeks to hold Defendant liable, alleging that the officers' conduct was the result of Defendant's policies and practices.  Defendant now moves for summary judgment.

## II.    Legal Standard

### a.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable

---

[2] Plaintiff brings claims for a coerced confession under both the Fifth and Fourteenth Amendments, resulting in two distinct causes of action based on similar conduct.  In the companion Opinion, these two claims are identified as Count III and Count IV.

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

The party seeking summary judgment bears the "initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Taita Chem Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) (cleaned up). "The movant satisfies this burden by showing that a reasonable jury could not find for the nonmovant based on the burdens that would apply at trial." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020) (citing *Anderson*, 477 U.S. at 252). A reasonable jury could not find for the nonmovant if "the [nonmovant] has a failure of proof on an essential element of [their] claim or because the [movant] has insurmountable proof of its affirmative defense to that claim." *Id.* (citing *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002)). The movant makes this showing by introducing undisputed evidence or by pointing out the lack of evidence supporting the nonmovant's case. *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

If the movant shows entitlement to judgment as a matter of law, the nonmoving party must then show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. The nonmoving party does so by demonstrating that there is a genuine issue of material fact and by showing that there is evidence favoring the nonmoving party that would permit a reasonable jury to rule in the nonmoving party's favor. *Joseph*, 981 F.3d at 329 (citing *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020)). The nonmoving party's evidence must create more than metaphysical doubt as to the material facts, and must set forth more than conclusory allegations, unsubstantiated assertions, or scintillas of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Instead, the nonmoving party must cite to "particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials[,]" or show "that the materials cited [by the movant] do not establish the absence … of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c). After the parties submit their evidence, courts are to view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, and resolve all factual controversies in favor of the nonmoving party. *Ivey v. Brennan*, 770 F. App'x 661, 664 (5th Cir. 2019). Further, courts do not make credibility determinations or weigh evidence at the summary judgment stage. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### b. Municipal Liability Standard

Under *Monell*, a municipality "can be sued directly under § 1983 … [where] the action that is alleged to be unconstitutional implements or executes a policy … officially adopted and promulgated by [the municipality's] officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). This requires a plaintiff to establish "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

An "official policy or custom" is most clearly established through a formal directive officially adopted and promulgated by a policymaker. *See Webster v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010), *modified on reh'g on other grounds*, 739 F.2d 993 (5th Cir. 1984).

Alternatively, when an official policy is not explicit, the "persistent widespread practice of city officials or employees … so common and well settled as to constitute a custom that fairly represents municipal policy" suffices. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (quoting *Webster*, 735 F.2d at 841). Additionally, in limited circumstances, the existence of a custom or policy may also be shown through a "single unconstitutional action" performed by a "final policymaker." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)).

Then, once an official policy or custom has been established, a plaintiff must show that the governing body of a municipality or an official to whom the governing body has delegated policy-making authority had actual or constructive knowledge of the custom. *See Okon v. Harris County Hosp. Dist.*, 426 F. App'x 312, 316 (5th Cir. 2011). "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information," while "constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.* (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc) (cleaned up).

Lastly, a plaintiff must show that the official policy or custom was the moving force behind his constitutional violation. There are two parts to this showing. "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). "That is, the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a

violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411) (cleaned up).

## III.    Discussion

### A. Preliminary Matters

Plaintiff alleges Defendant maintained three policies or practices which impaired his rights: (1) failing "to train its officers to exercise care and caution with juveniles"; (2) failing "to investigate and discipline officers for threatening and physically harming juvenile suspects and violating juvenile policies"; and (3) "encouraging officers to clear cases at all costs and tolerating dishonesty while deliberately failing to supervise officers." *See* Pl.'s Resp., ECF No. 367, at 4-5.

In response, Defendant argues that no genuine dispute of material fact exists and it is entitled to judgment as a matter of law.  Additionally, Defendant argues that certain claims briefed in Plaintiff's Response are not properly before the Court.  Defendant argues Plaintiff improperly includes new factual allegations and causes of action in his Response.[3]  The Court addresses the latter argument before returning to the former argument.

Beginning with Plaintiff's failure to train claim, Defendant is incorrect in asserting that the Complaint does not allege Defendant failed to train its officers to exercise care and caution with juveniles.  *See* Pl.'s Reply, ECF No. 386, at ¶ 2.  The Complaint specifically alleges that "[o]fficers were given no meaningful training on … appropriate interview techniques to use with juveniles, intoxicated suspects, and other suspects with limited or diminished capacities, and the

---

[3] Defendant claims that factual allegations raised in Plaintiff's Response that are not included in his Complaint are not properly before the Court.  Defendant is incorrect.  *See Duron v. Costco Wholesale Corp.*, 773 F. Supp. 3d 324, 344 n.3 (W.D. Tex. 2025).

need to exercise care and caution in such situations."  3d Am. Compl., ECF No. 153, at ¶ 178.

Plaintiff's failure to supervise claim is likewise properly before the Court.  The Complaint states:

> The need for robust systems of oversight and discipline was obvious on its face, and the deficiencies of the essentially non-existent systems that were in place were further demonstrated by the many incidents known to City policymakers, including those described above, where El Paso police officers were able to commit serious misconduct, and engage in deceit to cover up their own and other officers' misconduct, without meaningful supervision and oversight, and without any discipline or meaningful consequences to ensure the misconduct was corrected.  *Id.* at 181.

Further, the Complaint also provides that "[a]mong the many deleterious effects of the deficient or non-existent supervision and discipline described above is that it provided Defendants with the opportunity, authority and impetus to use impermissible and coercive tactics on Mr. Villegas, and use of improper investigative techniques including the fabrication and suppression of evidence in the Lazo/England investigation[.]"  *Id.* at 183.  Plaintiff's Response follows the same theory: "[t]he City maintained its failures to supervise and tolerating dishonesty despite a pattern of constitutional violations including integrity violations in the course of false arrests and the use of fabricated reports and evidence to secure convictions."  Pl.'s Resp., ECF No. 367, at 23.  With respect to both of these claims, Plaintiff has neither raised new claims nor reframed previously presented ones; therefore, they are properly before the Court.

Defendant is also incorrect in asserting that Plaintiff's failure to discipline claim is not properly before the Court.  Defendant claims that the Complaint does not indicate that the failure to discipline claim is limited to incidents involving juveniles.  Def.'s Reply, ECF No. 386, at 2. The Court agrees, but this does not mean Plaintiff has added a new claim or reframed a previously presented claim.  First, the Complaint undeniably pleads a failure to discipline claim.  *See* 3d Am. Compl., ECF No. 153, at ¶ 176.  Then, Plaintiff does not reframe this claim.  A claim is reframed when it shifts from one type of claim to a different type. *See Smith v. Stateline Road West Center,*

*LLC*, No. 3:21-cv-62, 2022 WL 4543181, at *4 (N.D. Miss. Sept. 28, 2022); *see also Duncan v. City of Freeport*, No. 3:23-cv-255, 2024 WL 2819118, at *2 (S.D. Tex. Jan. 23, 2024).  Plaintiff does not do this with his claim.  Plaintiff maintains the same claim but specifies that it applies only to a subset of the population identified in the Complaint.  Defendant had notice of the claim and both parties had access to the information shared during discovery.  Unlike when a plaintiff brings new or reframed claims, the Court has no concern that Defendant lacked notice of the basis of the claim.

Having settled this preliminary matter, the Court turns to analyzing the merits of Plaintiff's three claims.

### B. Analysis

### i.    Defendant is entitled to summary judgment on Plaintiff's failure to train claim.

The Court begins with Plaintiff's claim that Defendant failed to train its officers to exercise care and caution with juveniles.  Defendant moves for summary judgment on this claim, arguing Plaintiff cannot show any of the following: (1) that Defendant's training was inadequate; (2) causation; or (3) deliberate indifference.  Def. Mot. Summ. J., ECF No. 348, at 20.

Plaintiff, on the other hand, claims summary judgment is inappropriate as to this claim because "there is abundant evidence that the City knew of the need to protect juveniles, but decided not to train its officers and detectives on that issue."  Pl.'s Resp., ECF No. 367, at 10.

"A failure to train action is a type of *Monell* claim."  *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021).  To establish a claim for failure to train, a plaintiff must prove that "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional

rights." *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022). Further, in failure to train cases, the Fifth Circuit has created a burden shifting framework and explained that when employees "have received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010). It is not sufficient for a plaintiff to demonstrate "that more or different training or supervision would have prevented the result," and instead, a plaintiff must demonstrate that the training was "so deficient as to constitute deliberate indifference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005).

The parties dispute whether Defendant's officers received the minimum training required by Texas law. *See* Pl.'s Resp. to Def.'s PUF, ECF No. 367-2, at ¶ 57. Defendant relies on Henry Fluck's—Defendant's Assistant Police Chief at the time—affidavit that states that the "training programs were state of the art under TCOLE[4] standard and criteria, for teaching and educating our officers on constitutional and statutory requirements applicable to investigations." Fluck Aff., ECF No. 348-12, at ¶ 6. As Plaintiff recognizes, however, the problem is this conclusory declaration fails to explain how the training satisfied the applicable standards, and whether the officers involved in this case received such training. To the contrary, Plaintiff sets forth sufficient summary judgment evidence to create a dispute of fact as to whether the involved officers did receive adequate training. For example, Earl Arbogast's testimony reveals that he was unaware that the official policy was to obtain parental consent before interrogating juveniles. Arbogast Dep., ECF No. 367-24, at 101:19-25. Furthermore, Officer Ortega's—a juvenile officer—testimony indicates that he believed there was a policy allowing officers to interview a juvenile solely with the permission of the JPD officer. Ortega Dep., ECF No. 367-34, at 83:20-23.

---

[4] TCOLE is an abbreviation for Texas Commission on Law Enforcement.

Additionally, Officer Marquez stated that he was not trained that juveniles might be more susceptible to coercive tactics than adults. Marquez Dep, ECF No. 367-32, at 54:3-10. Based on the foregoing, a reasonable jury could find that Defendant failed to train it officers in this case how to properly interrogate juveniles.

Regardless, under both frameworks, Plaintiff must show Defendant acted with deliberate indifference. This is difficult to do. As the Supreme Court explained, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410). Plaintiffs can make such a showing in two ways. First, plaintiffs can show a pattern of constitutional violations that supports an inference that the need for further training must have been obvious to policymakers. *Sanders-Burns*, 594 F.3d at 381. Second, absent a pattern, plaintiffs can show that the risk of constitutional violations was or should have been a highly predictable consequence of the alleged training inadequacy, such that a single incident is sufficient to show deliberate indifference. *Id.* However, this avenue "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Hutcheson*, 994 F.3d at 483 (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018)).

Plaintiff does not show deliberate indifference through the single incident avenue. First, there was not a complete failure to train. Although Defendant provides no evidence that its officers received training tailored to juvenile suspects and interrogees, it provides evidence its officers received training on lawful investigative techniques to obtain statements and confessions. *See* Scagno Dep., ECF No. 348-9, at 122:10-123:15. Second, Plaintiff does not show that the risk of constitutional violations was a highly predictable consequence of the failure to train. It is undisputed that Defendant had policies in place to protect juveniles. Plaintiff shows that some of

Defendant's officers were unaware of policies applying to juveniles, but the Court cannot assume this small sample is sufficiently representative to make the risk of constitutional violations "highly predictable."  It is possible that the few officers Plaintiff cites who violated the policy are the ones who did not read or understand it, and the vast majority of officers otherwise followed the policy. Plaintiff provides no evidence for the Court to think otherwise.  Thus, based on the evidence Plaintiff provides, the risk of constitutional violations was not "highly predictable."

Therefore, Plaintiff must rely on the first avenue to demonstrate deliberate indifference—that is, by showing a pattern of similar misconduct.  When a plaintiff relies on prior incidents to demonstrate a pattern, those prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster*, 735 F.2d at 842); *see also Garcia v. City of Lubbock*, No. 21-11134, 2023 U.S. App. LEXIS 18513, at *10 (5th Cir. Jan. 20, 2023) ("Where a failure-to-train claim rests on an alleged pattern that amounts to deliberate indifference by city officials, a plaintiff must show a pattern 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'").  The prior incidents must also be similar to the violation the plaintiff alleges. *See Lewis v. Pugh*, 289 F. App'x 767, 773 (5th Cir. 2008).  "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis*, 406 F.3d at 383.  However, where the violations are "flagrant or severe," a "shorter pattern of conduct" will likely be sufficient to satisfy this element. *Bennett*, 728 F.2d at 768.

The prior incidents Plaintiff relies on to establish a pattern of misconduct are the same for his failure to train and failure to discipline claims.  In an effort to show a pattern, Plaintiff relies

on seven incidents occurring over a four-year period.[5]   Pl.'s Resp., ECF No. 367, at 13-14.  The incidents all involve officers using physical force or threats of force against juveniles during interrogations.  *Id.*  Additionally, the violations Plaintiff cites to establish a pattern are similar to his claim that Defendant's officers coerced an involuntary confession from him.

Having set forth the support for Plaintiff's claim, the Court finds it instructive to examine other courts' decisions assessing whether plaintiffs established a pattern.  Although these cases involve different claims and facts than this case, they nonetheless offer guidance to the Court. First, the Fifth Circuit disagreed with a district court decision holding that eleven incidents of unconstitutional searches were sufficient to defeat summary judgment.  *See Pineda*, 291 F.3d at 329.  The Fifth Circuit reasoned that "[e]leven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces."  *Id.*  Similarly, the Fifth Circuit affirmed a district court decision that twenty-seven complaints of excessive force over the course of a five year span in a city with more than 1,500 police officers and 67,000 incidents of crime did not reflect a pattern. *See Peterson*, 588 F.3d at 852; *Verastique v. City of Dallas*, 106 F.4th 427, 440 (5th Cir. 2024) (explaining that the court in *Peterson* held that twenty-seven complaints of excessive force is insufficient to establish deliberate indifference).  The Fifth Circuit reasoned that, given the department's size and the absence of data in the record of the total number of arrests during the same time period, twenty-seven incidents of excessive force could not "represent official policy of condoning excessive force."  *Peterson*, 588 F.3d at 852.  The Fifth Circuit then explained that "to hold otherwise would be effectively to hold the City liable on the theory of respondeat superior, which is expressly prohibited[.]"  *Id.*

---

[5] The case numbers for the seven credited incidents in Plaintiff's Response are IA 88-041, IA 89-015, IA 90-183, IA 91-029, IA 92-019, IA 92-174, and the incident involving Steven Alvarado.

Conversely, a district court held that twenty-six incidents of accidental discharge in five years precluded granting summary judgment. *See Escobar v. City of Houston*, No. 04-1945, 2007 U.S. Dist. LEXIS 72706, at *123-24 (S.D. Tex. Sept. 29, 2007). There, the court reasoned that "evidence of twenty-six similar incidents of accidental discharges in five years, coupled with the various inquiries, memos, and letters about HPD's weapons and use-of-force training, the inconsistent evidence as to what training HPD in fact provided on indexing and related techniques, and the obviousness of the risk created if officers are not trained on indexing, raises fact issues that preclude summary judgment." *Id.*

Here, even after viewing the incidents Plaintiff cites in the light most favorable to him, he fails to show a pattern sufficient to establish that Defendant acted with deliberate indifference. Plaintiff cites seven instances over a four year period where officers purportedly mishandled juveniles while apprehending or interrogating them. This rate of violations is too infrequent to constitute a pattern. *See Pineda*, 291 F.3d at 325; *Peterson*, 588 F.3d at 838.

Plaintiff argues otherwise, citing cases in the Fifth Circuit where courts have found a pattern despite there only being a few prior incidents. *See Sanchez v. Gomez*, No. 17-CV-133, 2020 WL 1036046 (W.D. Tex. Mar. 2, 2020); *Ramirez v. Escajeda*, No. 17-CV-00193, 2021 WL 3713064 (W.D. Tex. Aug. 20, 2021).[6] In *Sanchez*, the court dealt with four instances of officers using deadly force on persons suffering mental health crises. 2020 WL 1036046, at *15. The court reasoned that because the police did not have a crisis intervention team despite multiple well-publicized shootings, a reasonable jury could find the police chief deliberately indifferent to the

---

[6] *Sanchez* and *Ramirez* rely on identical prior instances to establish their patterns and use similar reasoning in doing so. *Compare Sanchez*, 2020 WL 1036046, at *15, *with Ramirez*, 2021 WL 3713064, at *25. Accordingly, the same reasons the Court gives for distinguishing Plaintiff's case from *Sanchez* apply with equal force to *Ramirez*.

risk of constitutional violations.  *Id.* at 26.  Importantly, the court relied on the well-publicized concerns about these types of shootings in finding that the police chief could have recognized a pattern and taken steps to make changes.  *Id.*  Here, we are not faced with a similar situation.  First, in cases where severe or flagrant force is used, less incidents are needed to show a pattern.  *Bennett*, 728 F.2d at 768.  While the prior incidents in this case are certainly unacceptable–particularly because they involve juveniles–they do not rise to the level of misconduct present in *Sanchez*.  *See e.g., Jenkins v. Rankin Cnty.*, No. 3:23-CV-374, 2024 U.S. Dist. LEXIS 130805, at *4 (S.D. Miss. July 24, 2024) (explaining that beating, tasing, sexually assaulting, simulating an execution and shooting a person is "severe and flagrant");  *Oporto v. City of El Paso*, No. 10-CV-110, 2010 U.S. Dist. LEXIS 91241, at *26 (W.D. Tex. Sept. 2, 2010) ("Additionally, excessive use of deadly force can be described as flagrant or severe, which reduces the frequency and pattern length needed to establish constructive knowledge.").  Additionally, Defendant's policymakers lacked comparable notice of the violations to that of the police chief in *Sanchez*.  Plaintiff claims that the police chief at the time, Chief Scagno, was aware that officers were taking statements and confessions from juveniles without parental consent, but the evidence Plaintiff cites does not support this contention.  *See* Scagno Dep., ECF No. 367-10, at 164:20-165:4.  Plaintiff also uses Chief Scagno's testimony where he states that in 1993, he was aware of TAC officers transporting juveniles incorrectly.  However, the prior incidents must be similar and specific to the misconduct that happened here.  Prior incidents involving the improper transport of juveniles would not put a policymaker on notice of officers fabricating evidence, suppressing evidence, or eliciting false confessions.

By using incidents involving improperly transporting juveniles to establish that Chief Scagno had notice of violations, Plaintiff attempts to enlarge the scope of the inquiry and argue that tangentially related incidents put Chief Scagno on notice that more training was needed with

respect to juvenile interrogations.  Plaintiff attempts to rely "any and all bad acts" to support his claim.  However, deliberate indifference requires than an actor disregard "a known or obvious consequence of his action."  *Connick*, 563 U.S. at 61.  Requiring plaintiffs to identify similar incidents is necessary because listing any and all bad acts does little to demonstrate that the policymaker was on notice of the violations, and thus on notice that more training was needed. Here, with the prior incidents being improperly transporting juveniles, Plaintiff falls well short of the mark.

Because Defendant correctly notes that Plaintiff fails to establish a pattern of violations and fails to establish that Chief Scagno otherwise had notice of similar persistent violations–and thus of the need to take corrective action–Defendant is entitled to summary judgment on this claim.

### ii.    Defendant is not entitled to summary judgment on Plaintiff's claim for failure to supervise and tolerance of dishonesty.

Plaintiff claims that Defendant demonstrated to its homicide detectives that "it would tolerate deliberate dishonesty and constitutional violations so long as officers were able to make arrests for crimes."  Pl.'s Resp., ECF No. 367, at 23.  Plaintiff continues that Defendant "maintained its failures to supervise and tolerating dishonesty despite a pattern of constitutional violations including integrity violations in the course of false arrests and the use of fabricated reports and evidence to secure convictions."  *Id.*  In response, Defendant contends that Plaintiff provides insufficient evidence to support his claim, and thus it is entitled to summary judgment. *See* Def.'s Reply, ECF No. 386, at 25-30.

Although Plaintiff's failure to supervise claim is distinct from his failure to train claim, both require him to satisfy the same elements.  Plaintiff must show that "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or

supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Henderson*, 51 F.4th at 130.

### a. Failure to Supervise

Plaintiff provides sufficient evidence that Defendant failed to supervise its officers. As detailed under the deliberate indifference prong, Plaintiff provides evidence that Defendant's policymakers were aware that officers were fabricating evidence, lying about and covering up abuse, and engaging in other forms of dishonesty. Plaintiff details incidents occurring over many years. Additionally, despite these incidents, Plaintiff provides evidence that supervisors did not regularly review detectives' reports in high stakes investigations. Specifically, detectives in the Crimes Against Persons division were not required to have their reports approved by supervisors. *See* Arbogast Dep., ECF No. 386-2, at 41:8-42:15; Moton Dep., ECF No. 367-4, at 96:18-97:15. Further, Plaintiff provides evidence that Defendant maintained a policy requiring officers to record confessions and juvenile witness statements, yet detectives in the Crimes Against Persons division continuously did not abide by this requirement. *See* CAP Manual, ECF No. 367-3, at 12849-50; Arbogast Dep., ECF No. 367-24, at 67:3-18; Graves Dep., ECF No. 367-33, at 50:23-52:5. According to Plaintiff, the lack of oversight allowed detectives to fabricate evidence and tell falsehoods without fearing repercussions. Pl.'s Resp., ECF No. 367, at 23. Plaintiff claims that Defendant's exemptions for Crimes Against Persons detectives led to a lack of case management and oversight and an inability to ensure proper investigations and documentation. *See* Pl.'s Resp., ECF No. 367, at 24-25. Defendant disputes this characterization. *See* Def.'s Response to Pl.'s PUF, ECF No. 386-2, at ¶¶ 125-130; *see also* Ocegueda Dep., ECF No. 386-2, at 15:11-17:14. Defendant provides evidence that supervisors in the Crimes Against Persons division regularly met with and oversaw officers in the division. *See* Ocegueda Dep., ECF No. 386-2, at 15:11-

17:14.  Defendant also submits evidence demonstrating that officers within the Crimes Against Persons division could not unilaterally sign off on their own reports.  *Id.* at 15:11-17:14; 32:21-34:14

The conflicting evidence presented by Plaintiff and Defendant creates a genuine dispute of material fact.  Defendant presents evidence that supervisors oversaw detectives in the Crimes Against Persons division, while Plaintiff offers evidence supporting the contrary.  This dispute cannot be resolved at summary judgment.

### b.  Causation

Plaintiff must show a causal link exists between Defendant's failure to supervise and his deprivation.  "This connection must be more than a mere 'but for' coupling between cause and effect.  To form the basis of liability under § 1983, a municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it."  *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

As previously discussed, Defendant provides evidence that supervisors in the Crimes Against Persons division supervised and monitored detectives in the division.  Defendant thus presents evidence that any failure to supervise did not cause Plaintiff's constitutional deprivation.  On the other hand, Plaintiff provides evidence that Defendant's officers fabricated evidence implicating him in murders he did not commit.  Further, some of the officers Plaintiff claims fabricated evidence were members of the Crimes Against Persons division.  Because Plaintiff puts forward evidence that there was limited supervision of detectives in the Crimes Against Persons division following instances where detectives fabricated evidence and covered up abuse, Plaintiff provides sufficient evidence that Defendant's failure to supervise was the moving force behind his violation.

In sum, Defendant presents evidence that it supervised officers in the Crimes Against Persons division, and therefore, Plaintiff's alleged constitutional injury is not attributable to any failure to supervise by Defendant. Plaintiff offers contrary evidence. This is a genuine dispute of material fact precluding granting summary judgment on this element.

### c. Deliberate Indifference

Plaintiff must provide a pattern of similar constitutional violations to establish deliberate indifference. *See Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 312-13 (5th Cir. 2023). Below is a sample of the incidents Plaintiff provides which the Court finds are similar to the constitutional violations Plaintiff alleges:

a. Defendant Marquez testified falsely at a suppression hearing about whether he had interrogated a defendant. *See* Incident Report, ECF No. 367-5, at 59461.

b. An officer lied about his partner being verbally and physically abusive to a suspect. *See* Incident Report, ECF No. 367-56, at 55930-33.

c. A sergeant intentionally misrepresented facts in an administrative statement regarding the physical abuse of a suspect. *See* Incident Report, ECF No. 367-62.

d. An officer was accused of choking a juvenile in custody and another officer testified falsely in his report about the events. *See* Incident Report, ECF No. 367-63.

e. An officer was accused of kicking, slapping, and ripping the shirt off of a minor without provocation. Plaintiff claims that multiple officers lied about whether misconduct occurred. *See* Incident Report, ECF No. 367-64.

f. An officer was suspended for preparing a false affidavit for purposes of sustaining an illegal arrest and advised another officer to commit perjury. *See* Incident Report, ECF No. 367-65.

g. A lieutenant beat suspects in front of other officers, and there were discrepancies between statements from the lieutenant and the other officers. The lieutenant was not investigated or disciplined for lying. *See* Incident Report, ECF No. 367-9.

h. An officer slapped a minor across the face, grabbed him by the neck, and pinned him against the wall. In the same case, another minor claimed that an officer coerced him into signing a false witness statement. *See* Incident Report, ECF No. 367-25, at 69776-78, 69782.

i.    A probationary officer was instructed by their superior to lie in a police report. After not complying with their superior's request, the probationary officer resigned due to retaliation from other officers. *See* Incident Report, ECF No. 367-66, at 64914.

As previously explained, in determining whether these incidents establish a pattern, the Court must determine whether the incidents are flagrant or severe. If the incidents are flagrant or severe, fewer are needed to establish a pattern. *See Bennett*, 728 F.2d at 768. Plaintiff provides evidence that Defendant tolerated dishonesty from its officers, including Defendant's officers fabricating evidence and covering up abuse. Officers fabricating evidence and covering up abuse are flagrant and severe violations. *See, e.g., Garnett v. Undercover Officer C0039*, No. 1:13-cv-7083, 2015 WL 1539044, at *12 (S.D.N.Y. Apr. 6, 2015) ("The fabrication of evidence by a police officer displays not just a callous indifference to the rights of the arrestee, but also constitutes an egregious abuse of authority."); *Treadwell v. Salgado*, No. 19 C 3179, 2022 WL 17752396, at *15 (N.D. Ill. Dec. 19, 2022) ("The Court emphasizes that it is extremely serious–and in fact, criminal– for police officers to manipulate evidence to incriminate someone. Such actions are intolerable from law enforcement."). Police officers have an essential role in the American criminal justice system. Often, officers are tasked with investigating crimes, collecting evidence, and testifying at trial. Officers fabricating evidence diminishes the reliability and credibility of the criminal justice process. Officers injecting this doubt into the criminal justice process is a flagrant or severe violation, requiring fewer violations to establish a pattern. Similarly, officers lying and covering up the abuse of arrestees is a flagrant or severe violation. Alone, physical abuse can be flagrant or severe. *See, e.g., Jenkins*, 2024 U.S. Dist. LEXIS 130805, at *4. Then, adding officers lying to cover up physical abuse supports the assertion that these violations are flagrant or severe. Similar to the Court's explanation regarding officers fabricating evidence, it is important that officers are

generally honest in their professional affairs. Officers lying to cover up physical abuse is compounding one violation with another. Thus, in the Court's opinion, this violation is also flagrant or severe.

The Court, having established that a shorter pattern of conduct can establish deliberate indifference for flagrant or severe violations, and having found that the incidents Plaintiff cites are flagrant or severe, finds that Plaintiff cites a sufficient number of incidents to establish deliberate indifference. As detailed above, Plaintiff provides at least nine instances of flagrant or severe violations. Plaintiff also provides evidence that Chief Scagno and Assistant Chief Messer, policymakers for Defendant during the instances he cites, had notice of these violations. *See* Pl.'s PUF, ECF No. 367-1, at ¶¶ 153-161. Assistant Chief Messer received notice of each violation alleged against Defendant's officers. Scagno Dep., ECF No. 367-10, at 54:13-55:16. Additionally, Chief Scagno met several times a week with Assistant Chief Messer to discuss serious disciplinary issues. *See* Def.'s Response to Pl.'s PUF, ECF No. 386-2, at ¶ 99. The purpose of presenting a pattern of violations is to demonstrate that decisionmakers were aware of the need for change. *See Bennett*, 728 F.2d at 768. Based on the seriousness of the incidents Plaintiff cites and the evidence indicating that Defendant's decisionmakers were aware of those incidents, a reasonable jury could conclude that Defendant acted with deliberate indifference. Plaintiff supports that Defendant's policymakers knew of the need to change and failed to make them. Courts in the Fifth Circuit, although faced with different facts and circumstances, have reached the same conclusion in cases involving flagrant or severe violations. *See Sanchez*, 2020 WL 1036046; *Ramirez*, 2021 WL 3713064.

As the Court explained in the legal standard, the party moving for summary judgment has the burden of showing that there is no genuine dispute of material fact and that they are entitled to

judgment as a matter of law.   Here, as the Court detailed, there are genuine disputes of material fact.  Defendant is not entitled to summary judgment on this claim.

### iii.    Defendant is entitled to summary judgment on Plaintiff's claim for failure to investigate and discipline.

Plaintiff claims Defendant failed to investigate and adequately discipline officers for misconduct involving juveniles.  Pl.'s Resp., ECF No. 367, at 13.  Specifically, Plaintiff claims Defendant's police department failed to investigate and discipline officers who "physically and verbally abused juveniles while making false arrests and coercing statements and confessions." *Id.*  Additionally, Plaintiff claims Defendant's failure to investigate and discipline extended to systemic patterns of misconduct.  *Id.* at 15.  In response, Defendant argues Plaintiff cannot produce sufficient evidence satisfying the elements of the claim.  Primarily, Defendant contends Plaintiff cannot demonstrate deliberate indifference.

To succeed on this claim, Plaintiff must show (1) that the city's failure to investigate and discipline amounted to deliberate indifference and (2) a causal link between that failure and the violation of his rights.  *Verastique*, 106 F.4th at 432; *see also Johnson v. Dall. Cnty. Hosp. Dist.*, No. 3:23-CV-01574, 2024 U.S. Dist. LEXIS 180826, at *29-30 (N.D. Tex. Oct. 3, 2024).

### a.  Deliberate Indifference

Defendant argues Plaintiff does not cite a pattern of violations establishing that it acted with deliberate indifference.  *See* Def.'s Reply, ECF No. 386, at 6-7.  Further, Defendant argues the incidents Plaintiff cites are not similar to the constitutional violations he alleges.  *Id.*  Plaintiff disagrees, contending that he provides a pattern of similar violations and that there is evidence showing Defendant's policymakers were aware of the incidents underlying that pattern.  *See* Pl.'s Resp., ECF No. 367, at 18-19.

As a preliminary matter, despite the incidents Plaintiff cites being serious, they are not flagrant or severe. The Court previously cited district court cases in the Fifth Circuit finding that police officers beating, tasing, sexually assaulting, and using deadly force can be described as flagrant or severe. *See e.g., Jenkins*, 2024 U.S. Dist. LEXIS 130805, at *4; *Oporto*, 2010 U.S. Dist. LEXIS 91241, at *26. Here, in addition, the Court found that officers fabricating evidence and lying to cover up abuse is flagrant or severe. But the incidents Plaintiff cites to support his failure to investigate and discipline claim are of a different character than for his failure to supervise claim. The incidents Plaintiff primarily cites involve officers attempting to elicit confessions from juveniles accused of minor offenses without notifying their parents or informing the juveniles of their rights. *See* Pl.'s Resp., ECF No. 367, at 10-11. Additionally, although some incidents involve the use of force, the level of force does not rise to the level of a beating. In one incident cited by Plaintiff, the physical force involved an officer poking a juvenile interrogee in the chest. *See* Incident Report, ECF No. 367-37, at 68517. Another incident involved an officer slapping a juvenile. *See* Incident Report, ECF No. 367-45, at 69520. Based on these examples, it is clear to the Court that the incidents Plaintiff presents here differ in character from those courts have deemed flagrant or severe. This does not mean that the incidents are minor, but, intrinsically, the terms flagrant and severe are comparative. Only certain violations can be considered flagrant or severe, otherwise the distinction between normal constitutional violations and flagrant or severe constitutional violations is superfluous. Police officers using severe physical force against arrestees or interrogees or fabricating evidence to implicate a suspect are meaningfully more severe violations than those alleged here.

Then, upon analyzing the incidents Plaintiff puts forward to support his claim, they are insufficient to establish a pattern. At best, Plaintiff provides eight instances where Defendant

failed to investigate. A pattern requires more. *See Pineda*, 291 F.3d at 325; *Peterson*, 588 F.3d at 838. This Court does not take the view that there must be a set number of incidents before a pattern exists, but more than eight is required. *See, e.g., Dawes v. City of Dallas*, 2021 WL 1192222, at *1 n.2 (N.D. Tex. Mar. 30, 2021) ("To succeed on a *Monell* claim by showing a pattern evincing municipal policy, the plaintiffs must show at least twenty-seven similar instances of police misconduct in three years.").

Additionally, similar to his failure to supervise claim, Plaintiff argues that Defendant's policymakers were aware of the prior incidents but took no action to address them. *See* Pl.'s Resp., ECF No. 367, at 19-20. However, showing that Defendant's policymakers were aware of the incidents is not enough to establish deliberate indifference. Deliberate indifference requires that the defendant or defendant's policymakers disregard a "known" or "obvious" consequence of their actions. *See Connick*, 563 U.S. at 61. Thus, Defendant's policymakers' mere knowledge of the prior incidents does not demonstrate deliberate indifference unless the incidents show they disregarded a known or obvious consequence of their inaction. Given the limited incidents Plaintiff provides and the relatively minor nature of those incidents, Plaintiff has not made the required showing. Defendant is entitled to summary judgment on this claim.

**IV.    Conclusion**

In accordance with the above discussion, the Court enters the following orders:

1.    It is **HEREBY ORDERED** that Defendant City of El Paso's Motion for Summary Judgment is **GRANTED** for Plaintiff's Failure to Train claim.

2.    It is **FURTHER ORDERED** that Defendant City of El Paso's Motion for Summary Judgment is **DENIED** for Plaintiff's Failure to Supervise and Tolerance of Dishonesty claim.

3.    It is **FURTHER ORDERED** that Defendant City of El Paso's Motion for Summary Judgment is **GRANTED** for Plaintiff's Failure to Investigate and Discipline claim.

In conjunction with its opinion ruling on the individual officers' motions for summary judgment, the Court has now ruled on all pending dispositive motions.  A separate order will follow, directing the remaining parties to submit their availability for trial.

**So ORDERED and SIGNED this 22nd day of August 2025.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**