UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **DANIEL VILLEGAS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | |
| **CITY OF EL PASO;** | § | |
| **YVONNE WHITAKER,** | § | |
| *In her capacity as the Executor of Decedent* | § | **EP-15-CV-00386-DCG** |
| *Alfonso Marquez's Estate*; | § | |
| **CARLOS ORTEGA;** | § | |
| **SCOTT GRAVES;** | § | |
| **RAY SANCHEZ; and** | § | |
| **UNKNOWN EMPLOYEES OF THE** | § | |
| **CITY OF EL PASO,** | § | |
| | § | |
| *Defendants*. | § | |

## ORDER PARTIALLY GRANTING MOTION TO SEVER AND PARTIALLY GRANTING MOTION TO BIFURCATE

Before the Court are (1) Plaintiff Daniel Villegas's Renewed Motion to Sever[1] and (2) Defendant City of El Paso's Opposed Renewed Motion to Bifurcate.[2]  After considering the parties' arguments, the record, and the applicable law, the Court **GRANTS** the Motion to Sever **IN PART** and **GRANTS** the Motion to Bifurcate **IN PART**.

---

[1] Pl.'s Mot. Sever, ECF No. 482.  Defendants oppose this motion.  *See* Defs.' Resp. Mot. Sever, ECF No. 485.

[2] City Mot. Bifurcate, ECF No. 484.  Plaintiff opposes this motion, *see generally* Pl.'s Resp. City Mot. Bifurcate, ECF No. 487; the other Defendants join the motion, *see* City Mot. Bifurcate, at 3.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

# I.    BACKGROUND

## A.    The England and Lazo murder investigations and Plaintiff's claims

This case revolves around the El Paso Police Department's investigations of the 1993 murders of Robert England and Armando Lazo, for which Plaintiff was initially convicted and later acquitted.[3]  Plaintiff alleges that, in connection with two investigations, various City of El Paso (the "City") police officers violated his constitutional rights by suppressing evidence, fabricating evidence, and coercing false confessions.[4]

The first investigation took place before Plaintiff's convictions in 1995 (the "First Investigation").  That investigation involved Defendants Alfonso Marquez,[5] Carlos Ortega, and Scott Graves, who were officers with the El Paso Police Department.  In connection with the First Investigation, Plaintiff alleges that:

- Defendant Marquez fabricated several witness statements;[6] suppressed taped witness interviews and confessions;[7] and coerced Plaintiff into a false confession;[8]

- Defendant Ortega fabricated Plaintiff's witness statement and coerced Plaintiff into a false confession;[9] and

---

[3] *See generally* 3d Am. Compl., ECF No. 153.

[4] *Id.*

[5] Alfonso Marquez died while this case was pending.  *See* Suggestion Death Marquez, ECF No. 421.  The Court therefore substituted Yvonne Whitaker, the executor of Marquez's estate, in Marquez's place as a named defendant.  *See* Order Grant Mot. Substitute Whitaker, ECF No. 457.  Any references to Whitaker in this Order refer to Whitaker in her capacity as executor of Marquez's estate.

[6] *See* 3d Am. Compl., ¶¶ 42, 50, 63.

[7] *See id.* ¶¶ 113–14.

[8] *See id.* ¶¶ 87–88.

[9] *See id.*

- Defendant Graves fabricated multiple witness statements.[10]

According to Plaintiff, the officers' misconduct during the First Investigation ultimately led to his indictment, convictions, and nearly twenty years in prison for crimes that he did not commit.[11]  Plaintiff further alleges that each officer's misconduct was attributable to the City's tolerance of dishonesty and failure to supervise.[12]

The second investigation took place after the Texas Court of Criminal Appeals vacated[13] Plaintiff's convictions in December 2013 (the "Second Investigation").  Plaintiff alleges that a different El Paso Police Department officer—Defendant Ray Sanchez—fabricated another witness statement, which was used against Plaintiff in a retrial.[14]  Like with the First Investigation, Plaintiff alleges that Defendant Sanchez's misconduct was attributable to the City's tolerance of dishonesty and failure to supervise.[15]

Plaintiff does not allege that Defendants Marquez, Ortega, or Graves played any role in the Second Investigation.  Likewise, Plaintiff does not allege that Defendant Sanchez played any role in the First Investigation.  The temporal relationship between Plaintiff's claims and Defendants can therefore be charted as follows:

---

[10] *See id.* ¶¶ 42, 50.

[11] *See generally id.*

[12] *Id.  See also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (allowing municipalities to "be sued directly under § 1983 . . . [where] the action that is alleged to be unconstitutional implements or executes a policy . . . officially adopted and promulgated by [the municipalities'] officers"); 42 U.S.C. § 1983.

[13] *See generally* 3d Am. Compl.

[14] *See id.* ¶¶ 130–58.

[15] *See id.* ¶¶ 167–85.  Only Plaintiff's failure to supervise and tolerance of dishonesty claims remain against the City.  *See generally* Order re City Mot. Summary J., ECF No. 473.

| First Investigation Claims | Second Investigation Claims |
|---|---|
| Defendant Marquez<br>Defendant Graves<br>Defendant Ortega<br>The City | Defendant Sanchez<br>The City |

The parties have litigated this case for nearly a decade.[16]  Discovery is complete,[17] and the Court has ruled on Defendants' motions for summary judgment.[18]

On September 22, 2025, Defendant Sanchez appealed the Court's denial of summary judgment on Plaintiff's Second Investigation fabrication of evidence claim.[19]  None of the other Defendants appealed the Court's summary judgment orders—the only issues standing between the non-Sanchez claims and trial are several pending motions to exclude expert testimony.[20]

## B.    Plaintiff's Motion to Sever

Plaintiff now moves the Court to sever his claims against Defendant Sanchez from the rest of his claims.[21]  The catalyst for Plaintiff's motion is Defendant Sanchez's appeal.[22]  That appeal challenges the Court's determination that qualified immunity does not bar Plaintiff's

---

[16] *See* Compl. (filed December 17, 2015).

[17] *See* 3d Am. Scheduling Order, ECF No. 249, at 2–3 (November 28, 2022 deadline for fact discovery; January 13, 2023 deadline for expert discovery).

[18] *See* Order re Officers' Mot. Summary J., ECF No. 472; Order re City Mot. Summary J.

[19] Sanchez Notice Appeal Order re Officers' Mot. Summary J., ECF No. 477.

[20] *See, e.g.*, November 7, 2025 Order, ECF No. 488 (discussing status of pending motions to exclude expert testimony).

[21] *See* Pl.'s Mot. Sever.

[22] *See* Sanchez Notice Appeal Order re Officers' Mot. Summary J.

fabrication of evidence claim against Defendant Sanchez.[23]  If the Court were to wait for the Fifth Circuit to resolve the appeal before holding a trial on Plaintiff's claims against the other Defendants, that would further delay the resolution of Plaintiff's nearly ten-year-old constitutional claims.

Plaintiff argues, however, that severing his claims would facilitate their prompt resolution.[24]  Plaintiff further argues that factual and temporal differences between the First and Second Investigations provide a meaningful avenue to sever claims without impairing judicial economy or risking inconsistent verdicts.[25]

Defendants disagree, contending that the two investigations arise out of the same series of transactions and occurrences and contemplate common questions of fact and law.[26]  Thus, Defendants argue, severing Plaintiff's claims would result in inefficiency, evidentiary overlap, and a risk of inconsistent verdicts.[27]

## C.      The City's Motion to Bifurcate

At the same time, the City seeks to bifurcate Plaintiff's *Monell* claims from claims against the defendant-officers.  The City argues that Plaintiff's *Monell* claims lend themselves to bifurcation because they depend on a finding that one or more of the defendant-officers violated Plaintiff's constitutional rights.[28]  Thus, a determination that no constitutional violation occurred

---

[23] *Id.*

[24] *See generally* Pl.'s Mot. Sever; Pl.'s Reply Mot. Sever, ECF No. 486.

[25] *Id.*

[26] *See generally* Defs.' Resp. Mot. Sever.

[27] *Id.*

[28] City Mot. Bifurcate, at 4–7.

in a first trial would obviate the need for a second, more expansive trial on Plaintiff's *Monell* claims.[29]  The City further argues that the differing standards and evidentiary requirements between *Monell* and individual claims would risk jury confusion and prejudice Defendants if the claims were tried together.[30]  For these reasons, the City advocates for trying the claims against defendant-officers first.[31]

Plaintiff in opposition argues that separate trials would be unnecessarily duplicative and inconvenient,[32] some *Monell* claims will require adjudication regardless of individual liability findings,[33] and a single trial would not prejudice defendants.[34]  Should the Court order separate trials, Plaintiff argues that the *Monell* claims should proceed first.[35]

## II.    LEGAL STANDARD

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."[36]  Whether to sever or bifurcate claims are matters within the sole discretion of the district court.[37]  "An abuse of discretion exists only when there is definite and firm conviction that the [district court]

---

[29] *Id.*

[30] City Mot. Bifurcate, at 7–8.

[31] *Id.* at 6.

[32] Pl.'s Resp. City Mot. Bifurcate, at 3–4, 7–12.

[33] *Id.* at 4–7.

[34] *Id.* at 12–13.

[35] *Id.* at 13–14.

[36] *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (citing cases).

[37] *See Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) (severance); *First Tex. Sav. Ass'n v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992) (bifurcation).

committed clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."[38]

In determining whether to sever claims, Federal Rules of Civil Procedure 20 and 21 require courts to consider factual and legal overlap, prejudice, delay, judicial economy, and fundamental fairness.[39]  "If a claim is severed out of a suit, it proceeds as a discrete, independent action with its own pleadings, discovery, trial, judgment, and appeal."[40]

Similarly, Rule 42(b) permits courts to bifurcate and order separate trials "in furtherance of convenience and to avoid prejudice or, when separate trials will be conducive to expedition and economy."[41]  Unlike severance, however, bifurcation typically results in separate trials but a single judgment.[42]

"Separation of issues . . . is not the usual course that should be followed,"[43] and "the burden is on the party seeking separate trials to prove that separation is necessary."[44]

---

[38] *Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir. 1994) (citation modified).

[39] *See* Fed. R. Civ. P. 20(a), 21; *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010); *see also Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995) (citing cases).

*See also Def. Distributed v. Bruck*, 30 F.4th 414, 431 (5th Cir. 2022) (laying out five factors for determining whether to sever claims).

[40] *Rule v. Bexar Cnty. Sheriff*, No. SA-00-CA-847 (IV), 2002 WL 1492269, at *2 (W.D. Tex. Apr. 4, 2002) (first citing *Allied Elevator, Inc. v. E. Tex. State Bank*, 965 F.2d 34, 36 (5th Cir. 1992); and then citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991)).

[41] *See W. Silver Recycling, Inc. v. Hartford Cas. Ins. Co.*, No. EP-04-CA-0440-KC, 2006 WL 8434057, at *1 (W.D. Tex. Dec. 5, 2006) (citing Fed. R. Civ. P. 42(b)).

[42] *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 n.19 (5th Cir. 1993) (citing 9 Wright & Miller's Federal Practice & Procedure § 2387 (Rev ed. 1971)).

[43] *McDaniel*, 987 F.2d at 304 (5th Cir. 1993).

[44] *See M-I LLC v. FPUSA, LLC*, No. 5:15-CV-406-DAE, 2021 WL 8946454, at *3 (W.D. Tex. Feb. 3, 2021) (citation modified).

## III.     DISCUSSION

### A.     Defendant Sanchez's appeal does not divest the Court of jurisdiction over the rest of Plaintiff's claims

Although the Parties do not raise the issue, the Court finds it appropriate to first address whether Defendant Sanchez's appeal divests the Court of jurisdiction over Plaintiff's claims against the other Defendants.

"The filing of a notice of appeal is an event of jurisdictional significance."[45]  Where a defendant appeals a court's denial of qualified immunity, that defendant is (at least temporarily) freed from the burdens of litigating the claims involved on appeal.[46]  Thus—having appealed the Court's denial of qualified immunity bearing on Plaintiff's lone remaining claim against him— Defendant Sanchez is freed from the burdens of litigating this case while the Fifth Circuit hears the appeal.

Whether Plaintiff may proceed on his claims against the other Defendants, however, is a different issue.  Qualified immunity is "a right to immunity *from certain claims*, not from litigation in general."[47]  A defendant-officer raising a qualified immunity defense does not automatically demand a global stay of claims brought against other defendants.[48]

---

[45] *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

[46] *Mitchell v. Forsyth*, 472 U.S. 511, 525–26 (1985); *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam).

[47] *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996) (emphasis in original).

[48] *See Ramirez v. Escajeda*, No. EP-17-CV-00193-DCG, 2022 WL 1744454, at *1 (W.D. Tex. May 31, 2022); *see also Engel v. Buchan*, No. 10 C 3288, 2011 WL 13151374, at *1 (N.D. Ill. June 8, 2011) (citing *Griggs*, 459 U.S. at 58).

Rather, the appeal only divests the Court of jurisdiction over the aspects of the case "involved in the appeal."[49]  Factual overlap does not necessarily draw claims into the scope of the appeal.[50]  The inquiry instead asks whether claims are "legally distinct."[51]  "When a claim not on appeal is legally distinct from one that is, the claim not on appeal can proceed before the district court."[52]

Defendant Sanchez appeals the Court's denial of his qualified immunity defense.[53]  This defense contemplates whether **his** conduct during the Second Investigation (1) violated Plaintiff's constitutional rights;[54] and/or (2) was "objectively unreasonable in light of clearly established law."[55]  This analysis does not consider whether—two decades earlier—the **other defendant-officers** violated Plaintiff's constitutional rights or acted objectively unreasonable in light of clearly established law.  Nor does it impact whether Plaintiff may hold the City liable under *Monell* for the other defendant-officers' conduct.[56]  The claims stemming from the First Investigation are legally distinct.

---

[49] *Griggs*, 459 U.S. at 58.

[50] *Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007)).

[51] *Id.*

[52] *See Escajeda*, 2022 WL 1744454, at *1 (citing *Alice L.*, 492 F.3d at 565).

[53] *See* Sanchez Notice App.

[54] *See Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020).

[55] *See Cantrell v. City of Murphy*, 666 F.3d 911, 921 (5th Cir. 2012); *Kinney v. Weaver*, 367 F.3d 337, 346–47 (5th Cir. 2004) (en banc).

[56] To hold a municipality liable under *Monell*, a plaintiff must establish (among other things) that a constitutional violation occurred.  *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

So too is the *Monell* claim stemming from the Second Investigation. The *Monell* analysis focuses in part on whether there was a violation of a constitutional right.[57] Defendant Sanchez's alleged conduct is, of course, central to that question in connection with the Second Investigation.[58] But "[w]hile a district court cannot proceed on that question with respect to a plaintiff's claim against a defendant-officer during the pendency of the officer's appeal, a district court may proceed with respect to that question as it applies to a plaintiff's *Monell* claim."[59] "Those claims are legally distinct."[60]

The Court therefore concludes that it retains jurisdiction over Plaintiff's claims against the City and Defendants Whitaker, Graves, and Ortega while the Fifth Circuit hears Defendant Sanchez's appeal.

**B.    The Court will bifurcate both Second Investigation claims from the First Investigation claims**

**1.    Bifurcation is better suited to these circumstances**

Having determined that it retains jurisdiction, the Court now turns to the Motion to Sever. The Court is concerned that severing claims into an independent action would create unnecessary logistical hurdles. For example, doing so would require the Court to independently determine which portions of various pending motions[61] apply to which case. Moreover, despite the claims

---

[57] *See, e.g.*, *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020).

[58] *See Harris v. City of Balch Springs*, 33 F. Supp. 3d 730, 733 (N.D. Tex. 2014) ("[E]ven if the Fifth Circuit were to grant [the officer] qualified immunity . . . he would necessarily be required to testify on behalf of the City.").

[59] *Escajeda*, 2022 WL 1744454, at *2 (citation modified) (first citing *Mitchell*, 472 U.S. at 526; and then citing *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998)).

[60] *Id*.

[61] *See, e.g.*, November 7, 2025 Order (discussing status of pending motions to exclude expert testimony).

being near trial ready, the Court would also need to consider whether and how the parties should replead in the severed action.

At bottom, Plaintiff wants to try his claims as soon as possible.[62]  Bifurcating Plaintiff's claims would accomplish this goal with much less complication.  Indeed, bifurcation would allow Plaintiff to proceed with other claims while Defendant Sanchez's appeal is still pending.  And—if justified by the circumstances—Rule 54(b) would permit the Court to enter final judgment after the resolution of those claims.[63]

Keeping Plaintiff's claims under the same umbrella presents the most efficient and expedient avenue to resolve this case.[64]  The Court will therefore consider Plaintiff's motion under Rule 42(b) rather than Rule 21.[65]

### 2.    The Court will bifurcate Plaintiff's claim against Defendant Sanchez from the First Investigation claims

Convenience, efficiency, economy, and prejudice govern the Court's analysis under Rule 42(b).[66]  The Court will begin with the first three factors.

---

[62] *See generally* Pl.'s Mot. Sever.

[63] *See* FED. R. CIV. P. 54(b) (district court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay").

[64] *Dietz*, 579 U.S. at 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." (citing cases)).

[65] *See* FED. R. CIV. P. 42(b); *see also Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996) (district court has "broad discretion in managing [its] docket"); *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996) ("[Rule 42] clearly suggests that a court may bifurcate a trial on its own motion.").

The Court also notes that many of the Parties' arguments for or against severance are equally applicable to bifurcation.  *See supra* Section II.

[66] FED. R. CIV. P. 42(b).

On the one hand, each claim traces its roots to the City's investigation of Plaintiff's role—or, more aptly, his lack thereof—in the England and Lazo murders.  The claims will inevitably share common facts.  And, given that Plaintiff has asserted a fabrication of evidence claim against each of the defendant-officers, those claims and their associated *Monell* claims will present common issues of law.  These considerations would support trying the First and Second Investigation claims together.

On the other hand, the First and Second Investigations were separated by over 20 years and involved entirely different officers.[67]  Whether Plaintiff's constitutional rights were violated during the First Investigation does not answer that question with respect to the Second Investigation, or vice versa.  The investigations yielded different results—whereas Plaintiff was convicted following the First Investigation, he was acquitted following the Second Investigation.  And, finally, the Fifth Circuit's determination of Defendant Sanchez's appeal may obviate the need to even try the Second Investigation claims.[68]  Trying the claims together could therefore prove minimally more convenient, efficient, or economical.

Because these factors cut both ways, they do not support deviating from the "usual course" of trying claims together.[69]

---

[67] *Compare* 3d Am. Compl. ¶¶ 19–118 (First Investigation) *with id.* ¶¶ 130–158 (Second Investigation).  *See also* Pl.'s Reply Mot. Sever, at 4 ("[T]he claims against Defendant Sanchez arise from a distinct, later transaction in which none of the primary Defendant Officers participated.").

[68] If the Fifth Circuit determines that Plaintiff will be unable to show that Defendant Sanchez's conduct violated a constitutional right, the related *Monell* claim may also fail.  This is because *Monell* requires plaintiffs to establish a constitutional violation.  *See, e.g.*, *Valle*, 613 F.3d at 541–42.

[69] *See McDaniel*, 987 F.2d at 304.

Prejudice, however, does support such a deviation.[70]  The passage of time looms large in this case.  Whereas courts recognize the passage of *years* as prejudicial,[71] the events that set this case into motion took place **over three decades ago**.[72]  Since Plaintiff filed his original complaint, this case has seen several judges, a retrial of the criminal case,[73] a global pandemic, the death of a party,[74] and multiple rounds of appeals.[75]  Each has played a role in the nearly ten years Plaintiff has spent waiting for his day in court, and the latest appeal threatens to add (at minimum) months more of delay.[76]

The interest in resolving Plaintiff's claims far outweighs whatever marginal efficiencies may be gained by trying the claims together.  "Delaying trial would increase the danger of

---

[70] *See Sims v. City of Jasper*, 117 F.4th 283, 290 (5th Cir. 2024) (citing 9A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2392 (3d ed. 2024)) ("Avoiding prejudice, though, seems to be given heightened weight, at least to the extent it is necessary to reverse an order to bifurcate.").

[71] *See Clinton v. Jones*, 520 U.S. 681, 707 (1997) (noting prejudicial effect of loss of evidence where six years had passed since complained-of conduct); *Rhoten v. Stroman*, No. 1:16-CV-00648, 2020 WL 3545661, at *4 (W.D. Tex. June 30, 2020) ("[The passage of six years] could significantly impact the likelihood of witnesses to be able to recall specific details from the event.").

[72] *See generally* 3d Am. Compl.

[73] *See, e.g.*, Order Adopting R. & R., ECF No. 68 (staying case while Plaintiff stood trial for third time in connection with England and Lazo murders).

[74] *See* Suggestion Death Marquez.

[75] *See, e.g.*, Sanchez Notice Appeal Order re Mot. Dismiss, ECF No. 198; Sanchez Notice Appeal Order re Officers' Mot. Summary J.

[76] For the twelve-month period ending June 30, 2025, the median time from filing a notice of appeal with the Fifth Circuit to disposition was 8.4 months. *See* U.S. Court of Appeals – Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/document/fcms_na_appprofile0630.2025.pdf (last visited December 5, 2025).

Defendant Sanchez's opening appellate brief is not due until January 5, 2026.  *See Villegas v. Sanchez*, No. 25-50800, ECF No. 18 (5th Cir. 2025).  The appeal will not be fully briefed or heard until even later.

prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of [another] party."[77]  Conversely, Defendants will not be prejudiced if the Court severs the claims.[78]  If anything, severing the claims would actually eliminate risk of confusion between Defendant Sanchez and the other defendant-officers' alleged conduct.[79]

These circumstances would weigh strongly in favor of bifurcating any case, but especially where, as here, the claims present constitutional issues.[80]  The Court will therefore bifurcate Plaintiff's claim against Defendant Sanchez from the First Investigation claims.

### 3.    Plaintiff's claim against Defendant Sanchez will proceed with the *Monell* claim stemming from the Second Investigation

The Court now turns to the *Monell* claim stemming from Defendant Sanchez's alleged conduct during the Second Investigation.  As discussed above, this claim is legally distinct from Plaintiff's claim against Defendant Sanchez.[81]  Thus, the Court retains jurisdiction to move forward with the Second Investigation *Monell* claim.

Still, while it retains jurisdiction, the Court believes a cautious approach is appropriate. "[A]t times, the Fifth Circuit analyzes denials of qualified immunity by first addressing the

---

[77] *Clinton*, 520 U.S. at 707.

[78] *Contra* Def.'s Resp. Pl.'s Mot. Sever, at 6.

[79] *Cf.* City Mot. Bifurcate, at 7–8; City Reply Mot. Bifurcate, ECF No. 489, at 3 ("It seems obvious that the City and the Defendant Officers will be prejudiced by the introduction of evidence not directly related to the specific facts of this case, which is more prejudicial that probative and may sway the jury as to each Defendants' independent liability obligations.").

[80] *See Rhoten*, 2020 WL 3545661, at *4 ("[T]he public interest disfavors the grant of a stay where it would hinder the speedy adjudication of constitutional claims." (citation modified)).

[81] *See supra* at 10.

question of whether the plaintiff has asserted a violation of a constitutional right at all."[82]  While the parties have yet to brief the issues on Defendant Sanchez's appeal, the Fifth Circuit's eventual analysis could affect the viability of Plaintiff's corresponding *Monell* claim.

The Court also finds it prudent to keep the Second Investigation claims together from a case management sense.[83]  The Court's decision to bifurcate Plaintiff's claim against Defendant Sanchez provides two options for how to proceed with Second Investigation *Monell* claim:

(1) Lump it in with the First Investigation claims, which do not contemplate Defendant Sanchez's conduct; or

(2) Keep it with the corresponding claim against Defendant Sanchez.

The Court finds the latter option far preferable to the former.

For these reasons, the Court will bifurcate both Second Investigation claims from the First Investigation claims.  Both Second Investigation claims will be stayed pending the outcome of Defendant Sanchez's appeal.[84]

---

[82] *Escajeda*, 2022 WL 1744454, at *2 (citation modified).

[83] *See Dietz*, 579 U.S. at 47 ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." (citing cases)).

[84] *Doe v. City of Austin*, No. 22-CV-299, 2022 WL 4234954, at *3 (W.D. Tex. Sept. 14, 2022) ("A district court has 'broad discretion to stay proceedings as an incident to its power to control its own docket.'") (quoting *Clinton*, 520 U.S. at 706)).

**C.     The Court will bifurcate trial of the First Investigation claims**

**1.     Plaintiff's claims against the defendant-officers stemming from the First Investigation[85] will be tried separately from their corresponding *Monell* claims**

The Court now turns the City's Motion to Bifurcate.  Once again, convenience, efficiency, economy, and prejudice govern the Court's analysis.[86]

As noted above, there is a high degree of overlap between Plaintiff's *Monell* and defendant-officer claims.[87]  The claims stem from the same investigation, require testimony from many of the same witnesses, and concern similar legal issues.  A single, unitary trial could provide an efficient means of resolving Plaintiff's First Investigation claims without the need for duplicative evidence or multiple trial settings.

Conversely, the City argues that because each claim requires a finding that a constitutional violation occurred, trying the defendant-officer claims first could obviate the need for a protracted presentation of evidence on *Monell*-specific issues.[88]

Plaintiff disagrees with the City, arguing that his *Monell* claims require a trial regardless of the outcome his claims against the defendant-officers.[89]  The Court acknowledges that "a finding of no individual liability should not ***automatically result*** in judgment of no liability for

---

[85] The Court reserves ruling on whether to bifurcate trial on the stayed Second Investigation claims.

[86] *See City of Jasper*, 117 F.4th at 290.

[87] *See supra* at 10.

[88] For example, evidence of an "official policy or custom" that was the moving force behind the alleged constitutional violation.  *See Valle*, 613 F.3d at 541–42 (quoting *Pineda*, 291 F.3d at 328).

[89] Pl.'s Resp. City Mot. Bifurcate at 3–7.

the municipality."[90]  But that does not mean that the outcome of the first trial **cannot result** in a

judgment of no liability against the City.  "[E]ven though a dismissal of all claims against

individual officer-defendants should not result in automatic dismissals of municipal-liability

claims, a finding of no Constitutional deprivation should."[91]  Were the Court to bifurcate the

First Investigation claims, a finding that Plaintiff was deprived of his constitutional rights would

eliminate the need for a second trial.

Of course, the Court cannot forecast how a jury will find or, resultingly, whether

bifurcated proceedings would prove more convenient, efficient, or economical.  The Court

therefore finds that these considerations do not support deviating from the usual course of trying

claims together.[92]

Again, though, the prejudice consideration does support such a deviation.[93]

"*Monell* liability claims inherently require plaintiffs to provide evidence of other officers'

wrongful acts."[94]  Thus, trying the claims together would require a jury to determine whether the

---

[90] *See Cook v. City of Dallas*, No. 3:12-CV-3788-P, 2016 WL 11258075, at *3 (N.D. Tex. Mar. 15, 2016), *aff'd sub nom. Cook v. Hopkins*, 795 F. App'x 906 (5th Cir. 2019) (citation modified); *see also* Pl.'s Resp. City Mot. Bifurcate, at 4.

[91] *Cook*, 2016 WL 11258075, at *3 (citing cases).

[92] *See City of Jasper*, 117 F.4th at 290–91 (agreeing that convenience, expedition, and economy weighed against bifurcation where liability determination **could** obviate need for damages trial).

The Court notes that *City of Jasper* involved a request to bifurcate liability from damages rather than some claims from other claims.  *See generally id*.  The Fifth Circuit's discussion suggests that where, as here, a "trial of one claim [c]ould preclude the need to try another claim," expedition and economy may support bifurcation.  *Id.* at 290–91.  Regardless, the Court finds that prejudice consideration, alone, supports bifurcation.  *Infra* at 17–19.

[93] *See supra* note 70.

[94] *Sanchez v. Gomez*, No. EP-17-CV-133-PRM, 2020 WL 919160, at *1 (W.D. Tex. Feb. 26, 2020).

defendant-officers violated Plaintiff's constitutional rights after hearing evidence of similar but unrelated incidents of police misconduct.

The City argues that jurors may (1) confuse which standards or evidence apply to a given claim[95] and (2) conflate the actions of other officers from unrelated incidents with the defendant-officers' actions in this case.[96]  These concerns—though present to some degree in any § 1983 case involving claims against both individuals and municipalities—are especially noteworthy here.  As the Court previously observed, the *Monell* evidence that Plaintiff seeks to introduce includes incidents of "flagrant or severe conduct." [97]  This evidence, "if proven, could be upsetting for any juror."[98]

The defendant-officers "should not have to defend [their] own actions in fear that [they] will be held liable for the wrongful actions of others."[99]  In many cases, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."[100]  This, however, is not many cases.  The existing procedural safeguards are insufficient to combat the especially high risk of prejudice associated with introducing *Monell* evidence in a unitary trial.

---

[95] *See* City Mot. Bifurcate, at 7–8.

[96] *See id.*; City Reply Mot. Bifurcate, at 3–4.

[97] *See* Order re City Mot. Summary J., at 18–20.

[98] *See Sanchez*, 2020 WL 919160, at *1; *see also Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993) (finding abuse of discretion where jury was exposed to "inflammatory" and "highly prejudicial" evidence relevant or admissible as to one claim but not as to other claims that could have been bifurcated).

[99] *See Ramirez v. Escajeda*, No. 3:17-CV-00193, 2021 WL 3778306, at *3 (W.D. Tex. Aug. 20, 2021); *see also Sanchez*, 2020 WL 919160, at *1.

[100] *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (citation modified).

The Court therefore finds it appropriate to bifurcate Plaintiff's claims against the City from his claims against the defendant-officers.

## 2.    The First Investigation claims will proceed in two stages before the same jury

Having determined that bifurcation is appropriate, the Court now turns to how to proceed with the bifurcated claims.  The City advocates for a two-stage, same jury proceeding—as was advanced by the Texas Supreme Court in *Transportation Insurance Co. v. Moriel*.[101]  Though typically used when bifurcating liability and damages proceedings,[102] courts also use two-stage, same jury bifurcation in § 1983 cases.[103]  Under this approach, the first trial would be confined to Plaintiff's claims against the defendant-officers.  If the jury returns a verdict that Plaintiff's constitutional rights were violated, the same jury would then hear Plaintiff's *Monell* claims against the City.

The Court agrees that the *Moriel*-style approach is suitable here.  This approach not only mitigates Plaintiff's concerns relative to duplicative evidence or inconsistent verdicts,[104] but it also enhances the potential benefits associated with bifurcation.  "[A] single trial, divided into two phases, to the same jury will avoid prejudice to either party, enhance the ability of the jury to

---

[101] *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 29–30 (Tex. 1994).

[102] *See, e.g.*, *Moriel*, 879 S.W.2d at 29–30; *United Healthcare Servs. Inc. v. Synergen Health LLC*, No. 3:20-CV-0301-X, 2023 WL 6471701, at *2 (N.D. Tex. Oct. 4, 2023).

[103] *See, e.g.*, *Avalos v. City of Corpus Christi*, No. C.A. C-05-159, 2006 WL 696495, at *2 (S.D. Tex. Mar. 16, 2006); *Cox v. Columbia Cas. Co*., No. CIV.A. 12-306-SDD-SC, 2014 WL 5465803, at *2 (M.D. La. Oct. 28, 2014).

[104] *See* Pl.'s Resp. City Mot. Bifurcate, at 10–12.

focus on the issues in front of it, and potentially increase efficiency to the extent the second phase proves unnecessary."[105]

The Court also agrees that Plaintiff's claims against the defendant-officers should proceed first. Allowing the jury to hear *Monell* evidence before turning to claims against the defendant-officers would defeat the purpose of bifurcating the First Investigation claims in the first place. Moreover, though the issue of whether a constitutional violation occurred is common among all claims, the *Monell* claims are much broader in scope. This is because *Monell* requires Plaintiff to make a host of showings that have little or no impact on the claims against the defendant-officers.[106] Proceeding with the *Monell* claims first would therefore add little convenience, efficiency, or economy even if the jury's findings obviated the need for a subsequent trial.

For these reasons, the Court will bifurcate trial of the First Investigation claims into two stages. Plaintiff's claims against the defendant-officers will be tried first. If the jury returns a verdict that Plaintiff's constitutional rights were violated, the same jury will hear Plaintiff's corresponding claims against the City.

## IV.    CONCLUSION

The Court therefore enters the following orders:

1.    It is **HEREBY ORDERED** that "Plaintiff's Renewed Motion to Sever" (ECF No. 482) is **GRANTED IN PART**. Both of Plaintiff's claims stemming from the Second

---

[105] *Transparent Energy, LLC v. Premiere Mktg., LLC*, No. 3:19-CV-3022-BT, 2021 WL 6200910, at *2 (N.D. Tex. Dec. 30, 2021) (citing *Alfwear, Inc. v. Icon Health & Fitness, Inc.*, No. 2:17-cv-00476, 2018 WL 6592728, at *1 (D. Utah Dec. 14, 2018)).

[106] *See Henderson v. Harris County*, 51 F.4th 125, 130 (5th Cir. 2022) (a *Monell* plaintiff must show that "(1) the city failed to . . . supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise . . . and the alleged violation of the plaintiff's rights; and (3) the failure to . . . supervise constituted deliberate indifference to the plaintiff's constitutional rights").

Investigation are hereby **BIFURCATED** from Plaintiff's claims stemming from the First Investigation.

2.      It is **FURTHER ORDERED** that Plaintiff's claims stemming from the Second Investigation shall be **STAYED** pending the resolution of Defendant Sanchez's appeal. That stay will **AUTOMATICALLY LIFT** on the day the Fifth Circuit releases its opinion in *Villegas v. Sanchez*, No. 25-50800 (5th Cir. 2025).

3.      It is **FURTHER ORDERED** that "Defendant City of El Paso's Opposed Renewed Motion to Bifurcate" (ECF No. 484) is **GRANTED IN PART**. Plaintiff's claims against Defendants Whitaker, Ortega, and Graves are hereby **BIFURCATED** from Plaintiff's corresponding *Monell* claims stemming from the First Investigation. The Court reserves ruling on whether to bifurcate the claims stemming from the Second Investigation.

4.      It is **FURTHER ORDERED** that Plaintiff's claims against Defendants Whitaker, Ortega, and Graves—including the issue of whether Plaintiff was deprived of his constitutional rights during the First Investigation—shall be **TRIED FIRST**.

5.      It is **FURTHER ORDERED** that if the jury returns a verdict that Plaintiff's constitutional rights were violated in connection with the First Investigation, then Plaintiff's corresponding *Monell* claims against the City shall be **TRIED SECOND** before the same jury.

      **So ORDERED and SIGNED this 9th day of December 2025.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**