**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **DANIEL VILLEGAS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | |
| **CITY OF EL PASO;** | § | |
| **YVONNE WHITAKER,** | § | |
| *In her capacity as the Executor of Decedent* | § | **EP-15-CV-00386-DCG** |
| *Alfonso Marquez's Estate*; | § | |
| **CARLOS ORTEGA;** | § | |
| **SCOTT GRAVES;** | § | |
| **RAY SANCHEZ; and** | § | |
| **UNKNOWN EMPLOYEES OF THE** | § | |
| **CITY OF EL PASO,** | § | |
| | § | |
| *Defendants.* | § | |

## ORDER REGARDING MOTIONS TO EXCLUDE OR STRIKE EXPERT TESTIMONY FROM DR. RICHARD LEO AND JOSEPH ALLIO

Before the Court are several motions to exclude or strike testimony from Plaintiff's

experts Dr. Richard Leo and Joseph Allio:

(1)    Defendant City of El Paso's (the "City's") Motion to Exclude Leo (ECF No. 425);

(2)    Defendant Alfonzo Marquez's[1] Motion to Exclude Leo (ECF No. 429) (together with the City's Motion to Exclude Leo, the "Motions to Exclude Leo");

(3)    the City's Motion to Exclude Allio (ECF No. 427);

(4)    the City's Motion to Strike Leo and Allio (ECF No. 411); and

---

[1] Alfonso Marquez died while this case was pending. *See* Suggestion Death Marquez, ECF No. 421. The Court therefore substituted Yvonne Whitaker, the executor of Marquez's estate, in Marquez's place as a named defendant. *See* Order Grant Mot. Substitute Whitaker, ECF No. 457. For the purposes of this Order, the Court's references to "Marquez" as a party refer to Whitaker.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

(5)   Marquez's Motion to Strike Leo and Allio (ECF No. 413) (together with the City's Motion to Strike Leo and Allio, the "Motions to Strike").[2]

After considering the parties' arguments, the record, and the applicable law, the Court **DENIES** the Motions to Exclude Leo; **DENIES** the Motion to Exclude Allio; and **PARTIALLY GRANTS** the Motions to Strike Leo and Allio.

## I.   INTRODUCTION

This case stems from the El Paso Police Department's investigations of the 1993 murders of Robert England and Armando Lazo, for which Plaintiff was initially convicted and later acquitted.[3]   Plaintiff alleges those investigations were flawed, used improper interrogation techniques, and ultimately led to his false confession, convictions, and nearly twenty years in prison for crimes that he didn't commit.[4]

Plaintiff designated two expert witnesses to critique those investigations.[5]   The first is Dr. Richard Leo, who Plaintiff retained to opine on police interrogation practices and techniques.[6] The second is Joseph Allio, who Plaintiff retained to opine on accepted police practices for homicide investigations.[7]

---

[2] Marquez merely adopts the City's motions by reference.   *See* Marquez Mot. Exclude Leo; Marquez Mot. Strike.

[3] *See generally* 3d Am. Compl., ECF No. 153.

[4] *See generally id.*

[5] Plaintiff designated another expert, Dr. Richard Rosenthal, to opine on whether the City adequately supervised its officers.   *See, e.g.*, Rosenthal Report, ECF No. 326-7, at 3.   Rosenthal's opinions are subject to another motion to exclude, ECF No. 326, which the Court will rule on separately.

[6] *See* Leo Report, ECF No. 425-1, at 5.

[7] *See* Allio Report, ECF No. 427-1, at 6–7.

The City and Marquez (together, "Defendants"[8]) seek to limit these experts' ability to testify at trial for two reasons.  First, in their Motions to Exclude, Defendants argue that several of Leo and Allio's opinions lack factual foundation, which (if true) would make those opinions inadmissible under Federal Rule of Evidence 702.[9]  Second, in their Motions to Strike, Defendants argue that Plaintiff refused to allow them to depose Leo and Allio and, thus, should either (1) be precluded from calling Leo or Allio at trial or (2) present them for deposition.[10]

As the Court will explain, Defendants' fact-based criticisms of Leo and Allio's opinions aren't proper bases to limit their testimony at trial.  The Court will, however, allow Defendants to depose Leo and Allio.

## II.     DISCUSSION

### A.     Motions to Exclude under Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

[8] Solely for the purposes of this Order, "Defendants" excludes Defendants Ortega, Graves, and Sanchez.

[9] *See generally* City Mot. Exclude Leo; City Mot. Exclude Allio; *see also supra* note 2.

[10] *See generally* City Mot. Strike; *see also supra* note 2.

>  (d) the expert's opinion reflects a reliable application of the
>  principles and methods to the facts of the case.[11]

Under *Daubert* and its progeny, trial courts play a gatekeeping role to ensure expert testimony is not only relevant, but also reliable.[12] "The proponent need not prove to the judge that the expert's testimony is correct, but [they] must prove by a preponderance of the evidence that the testimony is reliable."[13]

The Court's role in determining whether expert testimony is reliable "is limited and is not intended to displace the adversarial process."[14] Exclusion of expert testimony is the exception rather than the rule[15]—reserved for cases in which the testimony is so fundamentally unsupported that it offers no expert assistance to the jury.[16] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[17]

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for

---

[11] FED. R. EVID. 702.

[12] *See Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (first citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); then citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999)).

[13] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citation modified).

[14] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citation modified); *see also Lopez v. State Farm Lloyds*, 780 F. Supp. 3d 663, 671 (W.D. Tex. 2025).

[15] *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (citing *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019)).

[16] *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[17] *See Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas,* 483 U.S. 44, 61 (1987)).

the jury's consideration."[18]  Put more simply, "[e]xpert testimony should not be excluded simply because it [is] based on one party's version of the contested facts" rather than the other's.[19] "[T]he cure for disputes regarding the facts underlying an expert opinion is not to exclude the expert testimony, but to present the contradicting facts in cross-examination and to question [the expert] on how [their] expert opinion might change based on an alternative set of facts."[20]

### 1.    Dr. Richard Leo

The Court first considers the Motions to Exclude Dr. Richard Leo.[21]  Leo is a professor of law and psychology at the University of San Francisco.[22]  He's spent over thirty years "conduct[ing] and publish[ing] extensive empirical research on police interrogation practices, the psychology of interrogation and confessions, psychological coercion, police-induced false confessions, and erroneous convictions."[23]  Moreover, Leo has consulted on thousands of cases involving "disputed interrogations and/or confessions," and he's testified as an expert in hundreds more.[24]

---

[18] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (per curiam).

[19] *E.g.*, *Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-CV-1827, 2019 WL 6060203, at *1 (N.D. Tex. Nov. 14, 2019) (citation modified).

[20] *E.g.*, *Holmes v. Reddoch*, No. 19-12749, 2023 WL 2742155, at *4 (E.D. La. Mar. 31, 2023) (citation modified).

[21] *See* City Mot. Exclude Leo.

[22] *See* Leo Report at 2.

[23] *Id.* at 2.

[24] *Id.* at 2–3.

Plaintiff retained Leo to opine on the interrogation techniques used on Plaintiff and whether they could have induced Plaintiff to falsely confess to crimes he didn't commit.[25]  After reviewing transcripts, affidavits, statements, and other case materials, Leo opined that Plaintiff gave his confession subject to factors "that decades of empirical social science research has shown significantly increases the risk of eliciting false, unreliable and involuntary confessions when applied to innocent suspects" (the "Risk Factors Opinion").[26]  Those factors included:

(1)    Physical abuse and coercion;

(2)    Exhaustion and fatigue during a lengthy interrogation;

(3)    Sleep deprivation;

(4)    False and exaggerated evidence ploys;

(5)    Threats and promises;

(6)    Psychological coercion; and

(7)    Plaintiff's youth and personality traits.[27]

Defendants argue that the Risk Factors Opinion isn't based on sufficient facts or data and is therefore unreliable.[28]  Specifically, they direct the Court to Leo's discussion of three risk factors they argue are unmoored from the factual record—(1) physical abuse and coercion, (2) interrogation length, and (3) youth.[29]  The Court will address each in turn.

---

[25] *Id.* at 5.

[26] *Id.* at 24.

[27] *Id.* at 24–36.

[28] *See* City Mot. Exclude Leo; *see also* FED. R. EVID. 702(b) (requiring that expert opinions be "based on sufficient facts or data").

[29] *See* City Mot. Exclude Leo at 4–7.

### a.        Physical Abuse and Coercion

Defendants first challenge Leo's opinion that Plaintiff was subjected to physical abuse and coercion, which "significantly increased the risk of eliciting false compliance and a false confession from [Plaintiff]."[30]  Specifically, they focus on Leo's statement that Plaintiff was "repeatedly slapped, hit, and punched."[31]  Defendants argue that there aren't any facts showing that Plaintiff was "punched or hit with a closed fist during questioning."[32]  This, they argue, means that Leo's opinion regarding physical abuse and coercion is based on a false premise.[33]

If it were true that Leo had based this opinion on a completely "fictitious set of facts,"[34] that could justify exclusion.[35]  But that's not the case.  Leo's report considers whether Plaintiff was physically abused and coerced—not the specific manner in which Plaintiff was abused or coerced.[36]  While Defendants may quibble with Leo's single use of the word "punched," he lists numerous facts throughout his report that (if true) support his opinion that Plaintiff was subjected

---

[30] Leo Report at 25–26.

[31] City Mot. Exclude Leo at 4–5 (citation modified).

[32] *Id.* at 5 (arguing that Plaintiff instead testified that "he was slapped with an open palm in the back of the head" and "was only hit when . . . when Marquez's badge . . . occasionally sw[u]ng forward into Plaintiff's face.").

[33] *Id.* at 4–5.

[34] *See id.* at 3 (citing *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)).

[35] *See, e.g.*, *Guillory*, 95 F.3d at 1330–31 (affirming exclusion of expert testimony regarding accident reconstruction that used different product model and accident scene than those involved in the case); *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388–89 (5th Cir. 2009) (affirming exclusion of doctor's opinion where opinion was based on mistaken understanding of pathology report); *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 177 (5th Cir. 1997) (noting dubious admissibility of expert opinion based "substantially on an incorrect assumption").

[36] *See* Leo Report at 25–26.

to physical abuse and coercion.[37]  Those include Plaintiff's testimony that Marquez "kept on hitting [him] in the back of the head," "slapped [him] real hard," and "would hit [him] on the bottom."[38]  Even if the officers didn't punch Plaintiff, a jury could reasonably conclude that these other uses of force induced Plaintiff to falsely confess.

Leo's opinion regarding physical abuse and coercion is not "so fundamentally unsupported that it cannot possibly help the factfinder."[39]  Defendants can probe Leo's characterizations of how the officers physically abused or coerced Plaintiff on cross examination.[40]  Their arguments here, however, go to the weight of Leo's testimony rather than admissibility.[41]

### b.    Interrogation Length

Defendants next target Leo's opinion regarding the length of Plaintiff's interrogation. According to Defendants, "Plaintiff's testimony is not consistent with Leo's premise that Plaintiff was relentlessly subjected to questioning from the time he was arrested until he confessed."[42]

---

[37] *See, e.g.*, *supra* note 16 and accompanying text.

Leo's report only contains one reference to a punch.  *See* Leo Report at 25.  Conversely, Leo notes several times that Plaintiff was slapped and hit.  *See id*. at 25, 29, 30, 33.

[38] *See* Leo Report at 25.

[39] *See Gen. Elec. Cap. Bus. Asset Funding Corp.*, 2004 WL 5495590, at *5 (citing *Viterbo*, 826 F.2d at 422).

[40] *See Cavazos v. Leiva*, No. SA-23-CV-01176-XR, 2025 WL 2946620, at *4 (W.D. Tex. June 10, 2025) (citing *Daubert*, 509 U.S. at 596).

[41] *See 14.38 Acres of Land*, 80 F.3d at 1077.

[42] City Mot. Exclude Leo at 6–7.

Leo's opinion, however, draws on the concept of a "custodial interrogation."[43]  That concept recognizes that "breaks between accusation and questioning add to the stress and fatigue of the interrogation and sometimes are used as an interrogation method itself."[44]  Thus, Leo explains, "[i]t is the total amount of time in custody during interrogation that matters" for purposes of evaluating a suspect's fatigue and exhaustion.[45]

Here, Plaintiff testified in prior proceedings that he was interrogated at the time he was arrested.[46]  Plaintiff further testified that his interrogation continued intermittently over the course of the next several hours, which culminated in his confession nearly five hours after he was arrested.[47]  Based on that testimony, Leo opined that Plaintiff's arrest marked the start of a "[l]engthy custodial interrogation."[48]  While Defendants argue this opinion is "only useful if the testimony on which [it's] based is accurate,"[49] that argument clearly goes to Plaintiff's

---

[43] *See* Leo Report at 26–27.

[44] *See id.* at 26.

[45] *See id.*

[46] *See, e.g.*, Dec. 1, 1994 Suppression Hr'g, ECF No. 432-2, at 17:4–18:10.

[47] *See, e.g.*, Tr. Pl. Aug. 22, 2023 Dep., ECF No. 432-6, at 205:19–207:11; 298:13–299:15; *see also* Leo Report at 26.

[48] *See* Leo Report at 26.

[49] *See* City Mot. Exclude Leo at 2.

credibility, not Leo's admissibility.[50]  Expert witnesses are entitled to rely on disputed facts,[51] and whether those facts are accurate is an issue left to the jury.[52]

Defendants otherwise argue that Plaintiff's deposition testimony shows that he was "accused" rather than "interrogated" at the time of his arrest.[53]  In other words, they argue that the officers didn't question Plaintiff at that time.[54]  This is another factual issue.[55]  Plaintiff testified at deposition that the officers interrogated him—rather than merely accused him of wrongdoing—from the time he was arrested.[56]

Like his opinion regarding physical abuse and coercion, Leo's opinion regarding interrogation length is sufficiently supported by evidence that a jury could credit.[57]  Defendant's disagreement with Plaintiff's version of events is not a basis to exclude Leo's opinion.[58]

---

[50] *See Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Mil. Ltd.*, No. 5:03-cv-189-RF, 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004) ("[C]hallenges to the factual bases or underpinnings of an expert opinion usually go only to weight and credibility of the evidence, not admissibility." (citing cases)).

[51] *See Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 807 (E.D. La. 2011).

[52] *See Viterbo*, 826 F.2d at 422 (citing *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir.1985)).

[53] *See* City Mot. Exclude at 5–6.

[54] *Id.*

[55] *See supra* note 19 and accompanying text.

[56] *See, e.g.*, Tr. Pl. Aug. 22, 2023 Dep. at 299:10–15 ("They started that interrogation as soon as they arrested me and put me in that vehicle.") *id.* at 299:16–24 ("I am saying his interrogation started upon my arrest . . . [b]ecause I was handcuffed, I was detained, and I was in the back of a vehicle, and I was being questioned about a murder case.").

[57] *See* FED. R. EVID. 702(b).

[58] *SEC v. Life Partners Holdings, Inc.*, No. 1-12-CV-00033-JRN, 2013 WL 12076934, at *2 (W.D. Tex. Nov. 8, 2013) ("The fact that Defendants disagree with [a factual assumption] goes to weight, not admissibility." (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002))).

#### c.       Youth as a Risk Factor

Finally, Defendants seek to exclude Leo's opinion that the officers didn't follow proper procedures for handling juvenile arrestees.[59]  In his report, Leo identifies several different procedures that he concludes the officers failed to observe during Plaintiff's interrogation.[60] Defendants challenge Leo's conclusion that one such set of procedures required officers to take juvenile suspects to a juvenile probation officer then to a magistrate judge before questioning them about a murder.[61]  Defendants argue those procedures applied only to obtaining confessions, not initial questioning.[62]

Here again, Defendants reframe a factual dispute as an admissibility issue.[63]  Marquez himself agreed at deposition that he understood those procedures to apply "before you could question a juvenile about a murder."[64]  While Defendants may well disagree about the subject

---

[59] *See* City Mot. Exclude Leo at 6–7.

[60] *See* Leo Report at 44.

[61] *See* Leo Report at 44 (emphasis added); City Mot. Exclude Leo at 6.

[62] *See* City Mot. Exclude Leo at 6; *see also* Policy 7.02.010, ECF No. 425-3, at 3 ("Obtaining Confessions").

Defendants also argue that Plaintiff's deposition testimony demonstrates that—before taking his confession—the officers did bring him before a juvenile probation officer and a magistrate judge.  *See* City Mot. Exclude Leo at 7.

[63] *See Gen. Elec. Cap. Bus. Asset Funding Corp.*, 2004 WL 5495590, at *5 ("Courts should not lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility.").

[64] *See* Tr. May 10, 2022 Marquez Dep., ECF No. 379-69, at 3:5–11 ("[Q.]  Your understanding of the policy back in 1993 . . . was that you needed to get confirmation from the intake officer that the juvenile was willing to give a statement, and you needed to bring the juvenile to a magistrate ***before you could question*** a juvenile about a murder; is that right?  A.  Correct." (emphasis added)).

procedures' scope and application, Leo's conclusions (consistent with Marquez's deposition testimony) aren't "unmoored" from the factual record.[65]

Defendants' other arguments similarly invoke factual disputes over whether Plaintiff's testimony shows the officers followed applicable procedures. For example, whereas Defendants argue that Plaintiff never asked for a lawyer,[66] Plaintiff responds that he was never given the opportunity to contact a lawyer.[67] And whereas Defendants argue that the officers advised Plaintiff of his rights,[68] Plaintiff retorts that they never actually read him his rights.[69]

The Court's role here isn't to weigh facts that support Leo's opinions against those that don't.[70] That's for the jury to do.[71] What matters is that Leo's opinion that the officers failed to

---

[65] *Contra* City Mot. Exclude Leo at 7.

[66] *See id.* ("He testified that he never asked for a lawyer."); *see also* Tr. Pl. Aug. 22, 2023 Dep. at 271:14–21 ("[Q.] In your instance, you didn't ask for a lawyer, so you didn't have a lawyer, correct? . . . A. Are you asking if I asked for a lawyer? Q. Yes. A. No, I did not.").

[67] *See* Pl. Resp. Mots. Exclude Leo at 11 (arguing that "investigators failed to provide [Plaintiff] with access to a phone or the ability to contact his family or a lawyer"); *see also* Tr. Pl. Aug. 22, 2023 Dep. at 199:20–23 ("[Q.] At any point while he's questioning you, did you ask to be permitted to talk to a lawyer? A. I didn't feel I had that right.").

[68] *See* City Mot. Exclude Leo at 7 (arguing that Plaintiff was "advised of his rights and [issued a] 'juvenile warning' card"); *see also* Tr. Dec. 1, 1994 Suppression Hr'g at 26:17–27:9 ("They read both of our rights.").

[69] *See* Pl. Resp. Mots. Exclude Leo at 11 (noting that Leo's analysis considers "Plaintiff's testimony that he was never actually read his rights, rather he was just made to sign a waiver"); *see also* Tr. Dec. 1, 1994 Suppression Hr'g at 27:14–28:13 ("They never read me rights. They were just giving me [the juvenile warning card] to date and sign."); Tr. Pl. Aug. 22, 2023 Dep. at 184:15–20 ("I don't recall them reading us our rights.")

[70] *See Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) ("[I]n deciding whether an expert's report meets the reliability factor of a *Daubert* and Rule 702 analysis, the District Court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein.").

[71] *See Viterbo*, 826 F.2d at 422 (citing *Dixon*, 754 F.2d at 580).

follow the proper procedures for handling juvenile arrestees is supported by admissible evidence.[72]  It is—it just relies on evidence that Defendants contest.[73]

*****

Leo's opinions regarding physical abuse and coercion, interrogation length, and youth each find sufficient support in the record.  The Court therefore denies Defendants' motions to exclude those opinions.

### 2.  Joseph Allio

The City[74] next targets Joseph Allio.[75]  Allio is a law enforcement professional with over thirty years of municipal law enforcement experience.[76]  He has served as police chief for three northern California cities and has varied experience working homicide investigations—first as a violent crimes detective, and later in supervisory roles.[77]  He has also completed thousands of hours of Peace Officer Standards and Training courses, including courses covering homicide investigation, evidence documentation and collection, and suspect identification.[78]

Plaintiff retained Allio to critique "the quality and content" of the investigations here against accepted police practices for investigating homicides.[79]  After reviewing the case file,

---

[72] *See id.*

[73] *See Gen. Elec. Cap. Bus. Asset Funding Corp.*, 2004 WL 5495590, at *5 ("Courts should not lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility.").

[74] Marquez didn't join the City's Motion to Exclude Allio.

[75] *See generally* City Mot. Exclude Allio.

[76] *See* Allio Report at 2.

[77] *See id.* at 2–3.

[78] *See id.*

[79] *See id.* at 2.

Allio authored a report and opined that his review "revealed inconsistencies in the investigative process, a significant lack of physical evidence, deficiency in teamwork, leadership and supervision, along with deviations from standard and generally accepted police practices."[80] He further opined that "the cumulation of th[o]se inadequacies led to the failure by detectives to conduct a complete investigation . . . ."[81]

Among the "inadequacies" Allio identified were the officers' (1) flawed evaluation of crime scene evidence[82] and (2) failures to follow processes for interviewing and obtaining confessions from juveniles.[83] The City argues these opinions aren't sufficiently based in fact and are therefore unreliable.[84]

### a.    Crime Scene Evidence

The City first notes that Allio mixed up photos between the crime scene here and in another case.[85] The subject photos depict "a number of spray paint cans" and informed Allio's criticism that the officers failed to consider whether suspects had paint on their clothing or fingers.[86] The City argues Allio's mistaken reliance on photos from the wrong crime scene mean his opinions regarding the officers' handling of crime scene evidence are unreliable.[87]

---

[80] *See id.* at 8.

[81] *See id.*

[82] *See id.* at 11–14.

[83] *See id.* at 47–51.

[84] *See* City Mot. Exclude Allio at 4–7.

[85] *See id.* at 5.

[86] *See* Allio Report at 13.

[87] *See* City Mot. Exclude Allio at 4–6.

The Court agrees that Allio can't base his critiques of the England/Lazo murder investigations on photos of a different crime scene. The factual basis for that testimony isn't relevant.[88] But that doesn't mean all of his opinions on the issue are unreliable. Allio lists "at least [ ] ten other ways" that, in his opinion, the officers' handling of the crime scene deviated from investigative norms.[89] Those include criticisms that the officers didn't properly secure the crime scene, document evidence, or consider whether the crime scene evidence corroborated Plaintiff's confession.[90] Allio's report offers no indication that these other opinions are based on the presence of spray paint cans at the crime scene.[91]

The City argues that Allio's mix-up of photographs makes it "possible that he looked at the wrong statements, the wrong police report, [and] the wrong trial testimony" when forming his other opinions.[92] That argument, however, bears on credibility—not admissibility.[93] "It is the role of the adversarial system, not the court, to highlight weak evidence . . . ."[94] The City can

---

[88] *See Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

[89] *See* Pl. Resp. Mots. Exclude Allio, ECF No. 434, at 10; *see also* Allio Report at 11–14.

[90] *See* Allio Report at 10–12.

[91] *See id.*

[92] *See* City Mot. Exclude Allio at 5.

[93] *See 14.38 Acres of Land*, 80 F.3d at 1077 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."); *see also Gen. Elec. Cap. Bus. Asset Funding Corp.*, 2004 WL 5495590, at *5.

[94] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

tease out its concerns regarding the bases of Allio's other opinions via cross-examination.[95]

Speculation that Allio made other mistakes, however, doesn't merit exclusion.[96]

### b.    Juvenile Policies

The City also challenges Allio's opinion that the officers failed to observe juvenile policies before questioning suspects.[97]  As with Leo, the City disputes Allio's conclusion that applicable policies required officers to take juvenile suspects to a juvenile probation officer and magistrate judge before questioning.[98]   According to the City, those procedures related to obtaining confessions (not initial questioning), and the officers here did observe juvenile policy before taking Plaintiff's confession.[99]

These arguments are again unavailing.  Allio opines that the officers failed to observe several different juvenile procedures in this case.[100]  He supports each opinion with record cites,[101] including Marquez's agreement that "you needed to bring the juvenile to a magistrate

---

[95] *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (citing *Rock,* 483 U.S. at 61)).

[96] *See Walker v. Yellow Freight Sys., Inc.*, No. CIV.A.98–3565, 1999 WL 757022, at *8 (E.D. La. Sept. 24, 1999) ("[T]he 'perceived flaws' in an expert's testimony often should be treated as 'matters properly to be tested in the crucible of the adversarial system,' not as 'the basis for truncating that process.'" (quoting *14.38 Acres of Land*, 80 F.3d at 1078)).

[97] *See* City Mot. Exclude Allio at 6.

[98] *See id.*; *supra* notes 61–62 and accompanying text.

[99] *See* City Mot. Exclude Allio at 6; *supra* notes 61–62 and accompanying text.

[100] *See* Allio Report at 48–49.

[101] *See id.* at 48–50.

before you could question a juvenile about a murder."[102]  While the City may well disagree with

Allio's opinions, they aren't "unmoored" from the record.[103]

The City further argues Allio's juvenile policy opinions are unreliable because they're

internally inconsistent.  The City interprets (1) one portion of Allio's report to say Marquez (a

Crimes Against Persons detective) was familiar with and, thus, knowingly violated juvenile

law;[104] and (2) another portion of Allio's report to say the City's Crimes Against Persons

detectives were unfamiliar with juvenile law, meaning Marquez couldn't have knowingly

violated such law.[105]  It's unclear whether Allio intended the latter to include Marquez.  What is

clear, however, is that these portions of Allio's report are not opinions but instead summaries of

deposition testimony.[106]

Once again, the City's arguments go to the factual bases of Allio's opinions.[107]  These are

arguments for the jury to weigh in considering whether to credit Allio's testimony.[108]  They

aren't bases to preclude Allio from testifying.[109]

*****

---

[102] *See id.* at 48.

[103] *Contra* City Mot. Exclude Allio at 7.

[104] *See id.* at 6; Allio Report at 50 ("Marquez testified that despite the policy that youth services generally interrogate juveniles, Marquez did not follow that policy 'Because I'm the one that's investigating the crime.'").

[105] *See* City Mot. Exclude at 6; Allio Report at 53 ("The [Crimes Against Persons] and Youth detectives who in their depositions state that they are not familiar with juvenile law . . .").

[106] *See supra* notes 104–05.

[107] *Perez v. City of Austin*, No. A-07-CA-044 AWA, 2008 WL 1990670, at *5 (W.D. Tex. May 5, 2008) (citation modified).

[108] *See 14.38 Acres of Land*, 80 F.3d at 1077.

[109] *See id.*

As with Leo's opinions, Allio's opinions regarding crime scene evidence and juvenile policies are sufficiently supported by facts.  The Court therefore denies Defendants' motions to exclude those opinions.

**B.      Motions to Strike Leo and Allio under Fed. R. Civ. P. 37(b)(2)**

The final pair of motions don't attack Leo or Allio's opinions, but instead Plaintiff's alleged refusal to present them for deposition.[110]  According to Defendants, Plaintiff initially agreed to allow Defendants to depose both Leo and Allio after the expert discovery deadline.[111] Defendants argue that Plaintiff reneged on that agreement, preventing them from deposing either expert.[112]

The Court set an October 31, 2022 deadline for Plaintiff to designate experts and a January 13, 2023 deadline for the parties to complete expert discovery.[113]  While the Court permitted the parties to conduct post-deadline discovery by agreement, it explained that "there w[ould] be **no intervention** by the Court" absent extraordinary circumstances.[114]

Plaintiff timely designated Leo and Allio on October 31, 2022.[115]  On December 15, 2022, Defendants requested Leo and Allio's deposition availabilities.[116]  Plaintiff offered dates in January 2023 after the expert discovery deadline.[117]  Defendant accepted and noticed the January

---

[110] *See generally* City Mot. Strike.

[111] *See id.* at 2.

[112] *See id.* at 5.

[113] 3d Am. Scheduling Order, ECF No. 249, at 2.

[114] *Id.*

[115] City Mot. Strike at 2.

[116] *See* Dec. 15, 2022 Email, ECF No. 414-2, at 2.

[117] *See* Dec. 19, 2022 Email, ECF No. 411-2, at 2.

dates for Leo and Allio.[118]  Unfortunately, counsel for several defendants fell seriously ill for several months, and Defendants postponed the depositions.[119]  Plaintiff, however, agreed that the depositions could be rescheduled for late January or early February.[120]

Defendants again requested deposition availabilities in February 2023, to which Plaintiff responded that he could be flexible.[121]  Defendants didn't act on that flexibility, and Plaintiff informed them on February 14, 2023 that he "could not agree to an indefinite delay in taking the requested depositions."[122]

Plaintiff continued to offer dates in February, March, April, and May 2023—none of which Defendants accepted.[123]  When Defendant reached out months later on July 11, 2023,[124] Plaintiff responded that their request was untimely.[125]  Resultingly, neither Leo nor Allio have been deposed.[126]

### 1.    The Court won't strike Leo and Allio under Rule 37(b)(2)

Defendants first argue under Federal Rule of Civil Procedure 37(b)(2) that the Court should preclude Leo and Allio from testifying at trial because Plaintiff won't allow them to be

---

[118] *See* Notice Dep. Leo, ECF No. 411-2, at 15–16; Notice Dep. Allio, 411-2, at 11–12.

[119] *See* Jan. 20, 2023 Emails, ECF No. 414-2, at 5–10; *see also* City Mot.

[120] *See id.*

[121] *See* Feb. 5–6, 2023 Emails, ECF No. 411-2, at 31.

[122] *See* Feb. 14, 2023 Email, ECF No. 414-2, at 12.

[123] *See* February, March, and April Emails, ECF No. 414-2, at 14–18.

[124] *See* July 11, 2023 Email, ECF No. 414-2, at 20.

[125] *See* July 12, 2023 Email, ECF No. 414-2, at 23.

[126] *See* City Mot. Strike at 1.

deposed.[127]  That Rule authorizes a variety of sanctions for failure to comply with discovery orders, including issuance of an "order that certain . . . evidence [be] excluded."[128]  "District Courts have broad discretion in determining whether to impose a sanction under Rule 37 and, if so, what sanction to impose."[129]

Defendants argue that two Rule 37(b)(2) authorities support sanctions here.  The first is Rule 37(b)(2)(A), which contemplates sanctions where a party "fails to obey ***an order*** to provide or permit discovery."[130]  But Defendants don't identify (because the Court never issued) an order directing Plaintiff to accommodate Leo and Allio's post-deadline depositions.[131]  Rule 37(b)(2)(A) therefore doesn't apply.[132]

The second authority is Rule 37(b)(2)(B).[133]  That Rule permits the Court to award sanctions where "a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination."[134]  Again, Defendants don't (and can't) identify an order

---

[127] *See* City Mot. Strike at 5.

[128] *See Jane Envy, LLC v. Infinite Classic Inc.*, No. SA:14-CV-065-DAE, 2016 WL 5373035, at *4 (W.D. Tex. Sept. 26, 2016) (citing *Marshall v. Segona*, 621 F.2d 763, 766 (5th Cir. 1980) (citation modified)).

[129] *SEC v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 664–65 (5th Cir. 1981) (citing cases).

[130] *See* FED. R. CIV. P. 37(b)(2)(A) (emphasis added); *see also Fundient, LLC v. Johnson Controls, Inc.*, No. 1:22-CV-284-RP, 2023 WL 3043784, at *3 (W.D. Tex. Mar. 29, 2023).

[131] *See generally* City Mot. Strike; *see also* 3d Am. Scheduling Order ("Counsel may by agreement continue discovery beyond the deadline, but there will be no intervention by the Court except in extraordinary circumstances . . . .").

[132] *See ReSea Project ApS v. Restoring Integrity to the Oceans, Inc.*, No. SA-21-CV-1132-JKP, 2022 WL 17724419, at *4 (W.D. Tex. Dec. 15, 2022) (declining to award sanctions absent a violation of an order "to provide or permit specific discovery").

[133] *See* City Mot. Strike at 7 ("Rule 37(b)(2)(B) authorizes the district court to impose sanctions on a disobedient party by refusing to allow that party to introduce designated matters into evidence.").

[134] FED. R. CIV. P. 37(b)(2)(B).

directing Plaintiff to produce Leo and Allio for deposition.[135]  What's more, Rule 35(a)

contemplates examinations of "a party whose mental or physical condition . . . is in

controversy."[136]  Neither Leo nor Allio are parties.  Nor is there any indication that their mental

or physical conditions are at issue.  Rule 37(b)(2)(B) therefore doesn't apply either.

 Simply put, Defendants haven't shown that Plaintiff's conduct warrants sanctions under

Rule 37(b)(2).  The Court therefore denies Defendants' request to strike Leo and Allio.

### 2.    The Court will order Leo and Allio's depositions

Defendants alternatively request that the Court order both experts' depositions—in effect

asking the Court to extend their deadline to complete expert discovery.[137]  Federal Rules of Civil

Procedure 6(b)(1) and 16(b)(4) require parties seeking an extension to show good cause.[138]  The

good cause standard requires the "party seeking relief to show that the deadlines [could not]

reasonably be met despite the diligence of the party needing the extension."[139]

Moreover, where, as here,[140] a party requests an extension after the deadline has already

passed, Federal Rule of Civil Procedure 6(b)(1)(B) requires the moving party to show excusable

---

[135] *See generally* City Mot. Strike.

[136] *See* FED. R. CIV. P. 35(a).

[137] *See* City Mot. Strike at 7.

[138] FED. R. CIV. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, ***for good cause***, extend the time . . . ." (emphasis added)).

*See also* FED. R. CIV. P. 16(b)(4) (providing that a scheduling order "shall not be modified ***except upon a showing of good cause*** and by leave of the district judge" (emphasis added)); *S & W Enters., L.L.C. v. Sw. Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003).

[139] *S & W Enters., L.L.C.,* 315 F.3d at 535 (citation omitted).

[140] *Compare* 3d Am. Scheduling Order at 2 (setting January 13, 2023 deadline to complete expert discovery) *with* City Mot. Strike (filed August 7, 2023).

neglect.[141]  "[T]he determination [of whether a party has shown excusable neglect] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[142]

The Court will evaluate Defendants' request under both standards.

### a.    Good Cause

Four considerations animate the good cause analysis: (1) the party's explanation for their failure to comply with the scheduling order; (2) the modification's importance; (3) potential prejudice in allowing the modification; and (4) whether a continuance is available to cure such prejudice.[143]

Defendants offer two explanations for their failure to comply with the January 13, 2023 expert discovery deadline.[144]  First, they argue the only dates Plaintiff offered for Leo and Allio's depositions fell after the expert discovery deadline passed.[145]  Second, they argue that—although the parties initially agreed on post-deadline discovery—lead counsel for several defendants became seriously ill between mid-January and mid-April 2023.[146]  According to Defendants, their inability to take the depositions in early 2023 was attributable to that illness.[147]

---

[141] *See* FED. R. CIV. P. 16(b)(1)(B); *Rhodes v. Nova Transp., LLC*, No. 1:21-CV-191, 2023 WL 3681706, at *1 (W.D. Tex. Apr. 20, 2023).

[142] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

[143] *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010) (citation modified).

[144] *See* 3d Am. Scheduling Order at 2.

[145] *See* City Mot. Strike at 2.

[146] *See id.* at 3; City Reply Mot. Strike, ECF No. 415, at 1–3.

[147] *See* City Reply Mot. Strike at 2.

Though Defendants could have been more proactive after Plaintiff disclosed Leo and Allio on October 31, 2022,[148] Defendants still requested deposition availability with almost a month left before the expert discovery deadline.[149]  That gave Plaintiff reasonable time to procure his experts' availability in advance of the expert discovery deadline.[150]  The Court won't hold Plaintiff's offer of post-deadline availability against Defendants.

Nor will the Court hold against Defendants the illness that afflicted several defendants' lead counsel.  The Court previously recognized the severity of counsel's illness when it extended this case's dispositive motion deadline.[151]  Per Defendants' briefing, that illness persisted into at least mid-April (perhaps longer for recovery),[152] which generally coincides with the period during which the parties were discussing Leo and Allio's depositions.[153]  The Court finds this a valid explanation for Defendants' failure to accept the dates Plaintiff offered in early 2023.[154] The first consideration therefore weighs in favor of modifying the scheduling order.

The second consideration contemplates the importance of the proposed modification.[155] "The very structure of 'Rules 26(a) and (b) recognize[s] that being forced to cross-examine an

---

[148] *See* Pl. Resp. Mots. Strike, ECF No. 414, at 2–3.

[149] *See* Dec. 15, 2022 Email, ECF No. 414-2, at 2; 3d Am. Scheduling Order at 2.

[150] *See, e.g.*, *Duhaly v. Cincinnati Ins. Co.*, No. CV H-18-4158, 2019 WL 3202307, at *1 (S.D. Tex. July 16, 2019) (In the context of noticing depositions, "courts within the Fifth Circuit have held that at least ten days is normally required." (collecting cases)).

[151] *See* Sealed Order, ECF No. 319.

[152] *See* City Reply Mot. Strike at 2.

[153] *See supra* notes 119–23 and accompanying text.

[154] *Hines v. Santex Truck Ctrs.*, No. 5:19-CV-153-DAE, 2020 WL 7683284, at *1 (W.D. Tex. May 15, 2020) (finding good cause to modify scheduling order, in part, due to counsel illness).

[155] *See Meaux Surface Prot., Inc.*, 607 F.3d at 167.

- 23 -

opposing expert without the benefit of a meaningful opportunity to depose him puts a party at substantial disadvantage.'"[156]  The opportunity to depose Leo and Allio is highly important to Defendants and therefore weighs in favor of modification.

The final two considerations contemplate the prejudice associated with granting the modification and whether that prejudice may be cured by a continuance.[157]  The Court finds that the subject modification poses little if any prejudice to Plaintiff.  The Federal Rules of Civil Procedure expressly authorize deposing expert witnesses, meaning that Defendants would've been entitled to their depositions had they met the January 13, 2023 deadline.[158]  Though they didn't, their explanations were valid.[159]

Moreover, while the Court acknowledges Plaintiff's desire to try this case as soon as possible,[160] granting Defendants a short window to depose Plaintiff's experts won't delay trial. There isn't currently a trial date, meaning a continuance isn't necessary to accommodate depositions.[161]  The Court must also rule on two other motions to exclude expert testimony before setting the case for trial.[162]  Allowing Defendants to depose Leo and Allio won't delay that ruling or, consequently, setting a trial date.

---

[156] *Compagnie Des Bauxites De Guinee v. Three Rivers Ins. Co.*, No. 2:04CV393, 2007 WL 403915, at *2 (W.D. Pa. Feb. 1, 2007) (quoting *Brooks v. Price*, 121 Fed. App'x 961, 965 (3d Cir. 2005)).

[157] *See Meaux Surface Prot., Inc.*, 607 F.3d at 167.

[158] *See* FED. R. CIV. P. 26(b)(4)(A) ("A party may depose any person who has been identified as an expert whose opinions may be presented at trial."); *Schmidt v. Solis*, 272 F.R.D. 1, 2 (D.D.C. 2010).

[159] *See supra* notes 151–54 and accompanying text.

[160] *See* Pl. Resp. Mots. Strike at 2.

[161] *See* Order Vacate Trial Setting, ECF No. 453.

[162] *See generally* City Mot. Exclude Rosenthal; Pl. Mot. Exclude Noble, ECF No. 342.

In sum, the Court finds that each good cause consideration weighs in favor of modifying the scheduling order.  The Court now turns to excusable neglect.

### b.    Excusable Neglect

Whether a party has shown excusable neglect hinges on: (1) "the danger of prejudice" to the opposing party, (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith."[163]  Defendants have shown excusable neglect here.

First, the Court has already found that allowing Defendants to depose Leo and Allio wouldn't prejudice Plaintiff.[164]  Rule 26 expressly contemplates this form of discovery, and Defendants taking those depositions won't delay trial.[165]

Regarding the second and third considerations, the Court finds that Defendants' delay in seeking modification is excusable.  As far as the record shows, the nearly seven-month delay in seeking relief was a product of circumstances out of the parties' control.  The depositions were set for late January until serious illness befell several defendants' lead counsel.[166]  It was mid-April by the time counsel stepped foot back into his office,[167] June when Defendants

---

[163] *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 525 (5th Cir. 2021) (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 396).

[164] *See supra* notes 157–62 and accompanying text.

[165] *See supra* notes 158, 160–62 and accompanying text.

[166] *See supra* notes 118–19 and accompanying text.

[167] *See* City Reply Mot. Strike at 2.

reorganized,[168] and July when Defendants learned that Plaintiff opposed the depositions.[169]  The City then moved for relief on August 7, 2023.[170]  While substantial, that delay hasn't materially impacted these proceedings because there isn't currently a trial date.[171]

As for the final consideration, given the parties' initial agreement to post-deadline discovery,[172] the Court finds that Defendants operated under a good faith belief that they would be able to schedule the depositions after counsel recovered from his illness.[173]

*****

Defendants have shown both (1) good cause for modifying the expert discovery deadline such that they may depose Leo and Allio;[174] and (2) excusable neglect for their failure to request a modification before the expert discovery deadline expired.[175]  Under these extraordinary

---

[168] *See* June 9, 2023 Email, ECF No. 411-2, at 37.

[169] *See* July 12, 2023 Email, ECF No. 414-2, at 23.

[170] *See generally* City Mot. Strike.

[171] *See* Order Vacate Trial Setting.

[172] *See, e.g.*, *supra* notes 117–18 and accompanying text.

[173] *See, e.g.*, *Alarm Grid, Inc. v. Alarm Club.com, Inc.*, No. 17-80305-CV, 2018 WL 679490, at *4 (S.D. Fla. Feb. 2, 2018) (finding excusable neglect where parties previously discussed extending expert discovery cut-off).

To be clear, the Court doesn't ascribe any bad faith to Plaintiff for opposing Leo and Allio's depositions.  Plaintiff offered deposition availability for months—it's understandable that his patience would wane.

[174] *See supra* Section II.B.2.a.

[175] *See supra* Section II.B.2.b.

circumstances,[176] the Court will allow Defendants thirty days to take Dr. Richard Leo and Joseph Allio's depositions.[177]

To avoid further delaying trial, and because Defendants already moved to exclude Leo and Allio, Defendants won't be permitted to file additional pre-trial motions to exclude these experts.  Defendants may, however, test these experts' qualifications and opinions at trial.[178]

### III.    CONCLUSION

The Court therefore enters **ORDERS** that:

(1)    Defendants City of El Paso and Marquez's Motions to Exclude Dr. Richard Leo (ECF Nos. 425 and 429) are **DENIED**;

(2)    Defendant City of El Paso's Motion to Exclude Joseph Allio (ECF No. 427) is **DENIED**; and

(3)    Defendants City of El Paso and Marquez's Motions to Strike Dr. Richard Leo and Joseph Allio (ECF Nos. 411 and 413) are **GRANTED** as to their requests to depose Leo and Allio and **DENIED** as to the rest of their requests.

The Court **FURTHER ORDERS** that **on or before Friday, February 27, 2026**, Plaintiff shall **PERMIT** Defendants to take Dr. Richard Leo and Joseph Allio's depositions.

---

[176] *See* 3d Am. Scheduling Order at 2.

[177] *See Sheftelman v. Standard Metals Corp. (In re Standard Metals Corp.)*, 817 F.2d 625, 628 (10th Cir. 1987) (noting the court "has great discretion in establishing the time and place of a deposition"); *see also Stephens v. FAF, Inc.*, No. PE:18-CV-6-DC-DF, 2019 WL 580792, at *3 (W.D. Tex. Jan. 3, 2019).

[178] The Court declines to award attorney's fees in connection with Defendants' Motion to Strike. *See* FED. R. CIV. P. 37(a)(5) (allowing courts, in some circumstances, to award fees to prevailing parties on Rule 37 motions); *see also* Pl. Resp. Mots. Strike. at 9–10 (requesting attorney's fees under FED. R. CIV. P. 37(a)(5)(B)).  Neither party acted in bad faith, and the circumstances here would "make an award of expenses unjust."  *See* FED. R. CIV. P. 37(a)(5).

- 28 -

The Court **FURTHER ORDERS** the parties' counsel to **COOPERATE** in good faith so Defendants can promptly take these depositions.

The Court **FURTHER ORDERS** that Plaintiff's request for attorney's fees is **DENIED**.

**So ORDERED and SIGNED this 28th day of January 2026.**

_____

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**